**TIPPITT v. WOOD et al.**

No. 8507.

United States Court of Appeals
District of Columbia.

Argued Dec. 9, 1943.

Decided Feb. 7, 1944.

---

Mr. Harlan Wood, of Washington, D. C., for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, John P. Burke and Bernard J. Long, Assistant United States Attorneys, all of Washington, D. C., were on the brief, for appellees.

Before GRONER, C. J., and DOBIE,* and ARNOLD, JJ.

DOBIE, Circuit Judge.

Cleveland Tippitt (hereinafter called Tippitt) filed, in the District Court of the United States for the District of Columbia, a complaint against the members of the United States Parole Board (hereinafter called the Board) for the purpose of requiring the Board to serve a parole violator's warrant upon Tippitt, looking to his release from the Federal Prison at Steilacoom, Washington, where he is now detained. From a judgment of the District Court, dismissing his complaint, Tippitt has duly appealed.

In December, 1934, Tippitt, in the United States District Court for Kansas, was convicted and sentenced to imprisonment for a term of six years in the Federal Prison at Fort Leavenworth. His offense was a violation of the National Motor Vehicle Theft Act, generally known as the Dyer Act, 18 U.S.C.A. § 408. In November, 1938, Tippitt, for good behavior, was released conditionally on parole, while he still had about 734 days yet to serve under the conviction and sentence just mentioned.

In July, 1939, while he was at large on parole, Tippitt was arrested and charged with unlawfully and feloniously breaking into a Post Office of the United States at Trinidad, Texas. In October, 1939, upon his plea of guilty, Judge Allred, sitting in the United States District Court for the Eastern District of Texas, for the offense against the Post Office, imposed a sentence of imprisonment for a term of four years.

This sentence of Judge Allred was couched in the following language:

"Ordered and Adjudged that the defendant, having been found guilty of said offenses, is hereby committed to the custody of the Attorney General for imprisonment in an institution of the penitentiary type to be designated by the Attorney General or his authorized representative for the period of four (4) years. Sentence to run concurrently with any revocation of present suspended sentence and conditional release from the U. S. Penitentiary at Leavenworth, Kansas or other sentence in the U. S. District Court, Northern Division of Kansas, against this defendant.

"It is further ordered that the Clerk deliver a certified copy of this judgment and commitment to the United States Marshal or other qualified officer and that the same shall serve as the commitment herein."

The sentence thus imposed by Judge Allred expired on November 3, 1942; but Tippitt is now being detained to serve the unexpired portion of the sentence imposed by the United States District Court for Kansas on account of his violation of the Dyer Act. Manifestly, if (as Tippitt contends) that portion of Judge Allred's sentence which provides that the two sentences (one for the violation of the Dyer Act, the second for the offense against the Post Office) shall run concurrently, is valid, Tippitt is clearly entitled to the release that he seeks. The Board, on the contrary, contends that Judge Allred lacked either the power or the authority to direct that the existing grant of parole, or conditional release, be revoked so as to cause service by Tippitt of prior unexpired first sentence to run concurrently with the immediate second sentence presently imposed by Judge Allred.

Heavy reliance is placed by the Board upon the cases of Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, 116 A.L.R. 808, and Hammerer v. Huff, 71 App.D.C. 246, 110 F.2d 113. A careful reading of the opinions of Mr. Justice Black in the Zerbst case and of Associate Justice Stephens in the Hammerer case, convinces us that this contention of the

* Sitting by assignment of the Chief Justice of the United States, pursuant to the provisions of the Act of December 29, 1942, 28 U.S.C.A. § 17 et seq., entitled "An Act to amend the Judicial Code to authorize the Chief Justice of the United States to assign circuit judges to temporary duty in circuits other than their own." 56 Stat. 1094.

Board is correct. The philosophy of parole, as developed in the Zerbst case, is further explained in the recent opinion of Circuit Judge Sparks in Dolan v. Swope, 7 Cir., 138 F.2d 301.

In the Zerbst case, 304 U.S. at page 361, 58 S.Ct. at page 873, 82 L.Ed. 1399, 116 A.L.R. 808, Mr. Justice Black succinctly stated:

"When respondent committed a federal crime while on parole, for which he was arrested, convicted, sentenced, and imprisoned, not only was his parole violated, but service of his orginal sentence was interrupted and suspended. Thereafter, his imprisonment was attributable to his second sentence only, and his rights and status as to his first sentence were 'analogous to those of an escaped convict.' Not only had he—by his own conduct—forfeited the privileges granted him by parole, but, since he was no longer in either actual or constructive custody under his first sentence, service under the second sentence can not be credited to the first without doing violence to the plain intent and purpose of the statutes providing for a parole system.

"The Parole Board and its members have been granted sole authority to issue a warrant for the arrest and return to custody of a prisoner who violates his parole."

And, again (304 U.S. at pages 362, 363, 58 S.Ct. at page 874, 82 L.Ed. 1399, 116 A.L.R. 808), it was said:

"Since service of the original sentence was interrupted by parole violation, the full term of *that* sentence has not been completed. Just as respondent's own misconduct (parole violation) has prevented completion of the original sentence, so has it continued the authority of the board over respondent until that sentence is completed and expires. Discretionary authority in the board to revoke a parole *at any time before expiration of a parolee's sentence* was provided—and is necessary—as a means of insuring the public that parole violators would be punished. The proper working of the parole system requires that the board have authority to discipline, guide and control parole violators whose sentences have not been completed. It is not reasonable to assume that Congress intended that a parolee whose conduct measures up to parole standards should remain under control of the board until expiration of the term of his sentence, but that misconduct of a parole violator could result in reducing the time during which the board has control over him to a period less than his original sentence.

"Parole is intended to be a means of restoring offenders who are good social risks to society; to afford the unfortunate another opportunity by clemency—under guidance and control of the Board. Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offense committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified."

Counsel for Tippitt endeavor to distinguish the Zerbst case from the instant case on the ground that in the Zerbst case the second sentence contained no express provision that this sentence should run concurrently with the first sentence, while, in Tippitt's case, the second sentence of Judge Allred did expressly provide for the concurrent running of both the first and second sentences. There is some force in the distinction, but, even upon the Zerbst case alone, we should be inclined to hold Mr. Justice Black clearly indicated a sharp line of cleavage between the power of a federal District Court as to the second sentence, and the authority of the Board as to the first sentence, with a crisp implication that power over the first sentence, in connection with parole, rested with, and solely with, the Board.

In the Hammerer case, the facts were practically identical with the instant case, for the second sentence imposed on Hammerer did contain an express provision that the first and second sentences should run concurrently. After a discussion of the applicable statutes, and the opinion of Mr. Justice Black in the Zerbst case, Associate Justice Stephens (speaking for this Court of Appeals), stated (71 App.D.C. at page 249, 110 F.2d at page 116: "We think this decision of the Supreme Court, in view especially of the italicized portions of the opinion, makes clear that in the instant case only the District Board of Parole, by terminating the conditional release, could cause the unexpired portion of the first sentence to commence to run again, and that the trial judge in imposing the second sentence had no power to cause it and the

unexpired portion of the first sentence to run concurrently."

We do not think it is necessary to add materially to what was said in the opinion of Mr. Justice Stephens.

An attempt is made by counsel for Tippitt to distinguish the instant case from the Hammerer case. We are told: "In the Hammerer case, a local statute of different provisions from the federal acts generally was involved. A comparative reading of their provisions demonstrates this inescapable fact." Tippitt's counsel, however, fails to point wherein these differences lie, and we are unable to find (so far as the decision of the instant case is involved) any essential differences between the statutes applicable to the United States Board of Parole and United States District Courts other than those in the District of Columbia and the statutes applicable to the District of Columbia Board of Indeterminate Sentence and Parole and the United States District Court for the District of Columbia. That precise contention was decided against Tippitt in the Hammerer case; for Associate Justice Stephens held that the decision in the Zerbst case (not involving the District of Columbia) was binding in the Hammerer case (involving the District of Columbia) because the Zerbst case was "decided under statutes concededly similar to those applicable to the instant case (the Hammerer case)." 71 App.D.C. 246, 248, 110 F.2d 113, 115.

Tippitt is very clearly serving a sentence which Judge Allred did not intend that Tippitt should serve. The tragic fact for Tippitt seems to be that Judge Allred sought to encompass his judicial intention by means that were beyond his power and methods that exceeded his authority. Had Judge Allred, wishing to imprison Tippitt for a maximum of four years in any event, subtracted the unserved portion of Tippitt's first sentence from four years, and imposed an absolute and unconditional sentence for a period of time represented by the difference between the two figures (four years minus 734 days), there could be no question, we think, as to the validity of the sentence.

But that is not what Judge Allred did. He first imposed upon Tippitt a sentence of four years. So far, so good. Then Judge Allred undertook (by prescribing a concurrent running of both sentences) to tell the Board what the Board must do under the circumstances. This direction lacked legal validity; for Judge Allred had no power to tell the Board how it must act in the light of Judge Allred's sentence. It is equally true that the Board could have issued no instructions to Judge Allred as to how he (in pronouncing the second sentence) must act in the light of the Board's previous action. The two jurisdictions are separate and distinct, each from the other. Unto the Board must be rendered the things that are the Board's; to the judge, the things that are the judge's. Technically speaking, it was a legal impossibility for Judge Allred to make the second sentence run concurrently with the first sentence; for this first sentence was not then running but had been suspended. He could not himself awaken the sleeping sentence; by the same token, he could not forbid the Board to arouse this first sentence from the Board-imposed coma. Only the power that erects here has the power to remove.

We are not impressed by the broad generality that the power of the District Court (in Texas) should be superior to the power of the Board. And quite irrelevant is any discussion of the jurisdiction of the District Court over those placed on probation by the court itself. Probation and parole here present so many manifest differences that this attempted analogy is neither happy nor helpful.

We do not hesitate to express our real sympathy for Tippitt, the victim of good intentions expressed all too unfortunately. In the record before us there seems to be no good reason why he should not be released by the Board. There may, of course, be in the Board's possession information not available to us. Perhaps the Board wished to make a test case, thus compelling Tippitt to assume the temporary (but painful) role of a juristic guinea-pig for jurisdictional experimentation. Failing successful recourse to the Board, Tippitt might make timely appeal for clemency at the hands of the executive power. But we cannot wrest once the law to our authority and decide this case according to sympathy rather than the law. The orderly administration of the law must sometimes result in regrettable hardships. See Helms v. Holmes, 4 Cir., 129 F.2d 263, 267, 141 A. L.R. 1367. Such relief as may be available to Tippitt in his unhappy predicament is not to be sought at our hands.

The judgment of the District Court is affirmed.

Affirmed.

ARNOLD, Associate Justice (dissenting).

I concur in the result only. It is clear that the petition for mandamus should be dismissed because it is an attempt to compel the Parole Board to exercise its discretionary power over its own warrants. This court has no power to review the action of the Parole Board. The real issue in this case is the validity of appellant's confinement at Steilacoom, Washington. That issue can only be tried in a habeas corpus proceeding against the persons who are actually confining him.

But the opinion of the majority considers and decides the substantive issue of the legality of the confinement of a prisoner in spite of the fact that the officers who are detaining him are beyond the jurisdiction of this court. In doing so it establishes the novel precedent that a petition for mandamus can be used as a substitute for the traditional writ of habeas corpus. Such a precedent is not only unsupported by authority; it also sows the seeds for future procedural confusion. And further, on the issue of substantive law which the opinion of the majority purports to decide in spite of lack of jurisdiction, it reaches the palpably unjust conclusion that appellant must serve almost two years longer than the sentencing judge intended. I feel so strongly that the views of the majority combine an error in assuming jurisdiction with erroneous obiter dicta that I dissent from them with some emphasis.

I take up first the jurisdictional point. We have before us, as appellant, a prisoner seeking release from confinement by the warden of a Federal prison at Steilacoom, Washington, thousands of miles from the jurisdiction of this court. The majority opinion assumes (perhaps correctly, though it does not appear from the record) that the action of the warden at Steilacoom will be governed by instructions or advice from the Parole Board here. The opinion further assumes that if the Parole Board is ordered to serve its warrant on the prisoner it will be put in a position, the logic of which will impel it to instruct the warden to release him. On this assumption the substantive issue of the validity of appellant's imprisonment is considered and decided against him by the majority. The only basis for the attempt of the majority to decide this issue in a mandamus proceeding brought in the District of Columbia, in the absence of the necessary parties to a writ of habeas corpus, is the fact that the Parole Board has been served here.

This assumption of jurisdiction is clearly erroneous. In the first place, this court has no statutory power to review the action of the Parole Board in issuing or withholding parole violator's warrants.[1] In the second place, a writ of mandamus against persons advising or instructing a warden to retain a prisoner cannot be used as a substitute for a writ of habeas corpus in determining the legality of the imprisonment. I am not raising a mere question of form. If legality of confinement can be determined by mandamus of government officials who issue instructions to prison wardens, then all such cases arising from the revocation of parole may be shifted to Washington, D. C., because the Parole Board can be served there. In addition, all other cases of alleged invalid Federal imprisonment can be shifted to this court, because the Attorney General, whose instructions are followed by Federal prison wardens, can also be served here. This court cannot assume such a roving and footloose jurisdiction over the custody of all Federal prisoners.[2]

Since this court lacks jurisdiction to determine the issue of the legality of the imprisonment in this case, it follows that the observations of the majority on that issue are obiter dicta. I emphasize this because

---

[1] "The Parole Board and its members have been granted sole authority to issue a warrant for the arrest and return to custody of a prisoner who violates his parole." Zerbst v. Kidwell, 1938, 304 U.S. 359, 361, 58 S.Ct. 872, 873, 82 L.Ed. 1399, 116 A. L.R. 808.

[2] "* * * The party, on whose behalf the petition has been presented, is not an inhabitant of the District of Columbia; he was not arrested or committed, and has never been confined, within its limits. Jurisdiction to issue the writ on his behalf, then, depends upon the single circumstance that the Secretary of the Navy is alleged to have the final control over his imprisonment. It is to this broad claim of jurisdiction that we deny our assent." McGowan v. Moody, 1903, 22 App.D.C. 148, 163.

694

it is important to make it clear that if a court of competent jurisdiction is asked to pass on the issues in a future habeas corpus proceeding, it will not be bound by the dicta of the majority.

I will now discuss the substantive issue which these obiter dicta purport to determine. This requires a brief restatement of the facts. In October, 1939, while appellant was at liberty on parole from the Federal prison at Leavenworth, he was convicted of a second offense in the United States District Court for the Eastern District of Texas. His unexpired sentence at Leavenworth had approximately two years to run. Taking this fact into consideration Judge Allred, who tried the case, gave him a four year sentence with the condition that it should run concurrently with his unexpired term in the event the Parole Board revoked his parole. The intention of the sentencing judge is plain beyond dispute. On the one hand he wished to forestall any decision of the Parole Board which would allow appellant his liberty at the end of two years. On the other hand he wanted to make it certain that appellant would serve no more than four years in all, including his unexpired term. This sentence was beyond the power of Judge Allred to impose.[3] It was an attempt to control the discretion of the Parole Board in two ways: (1) by preventing them from freeing the prisoner at the end of two years; and (2) by preventing them from compelling the prisoner to serve a total of six years.

Appellant was taken to the Federal prison at Steilacoom, Washington. The Parole Board issued its warrant for violation of parole and lodged it with the warden at Steilacoom, with instructions that it be served *after the expiration of the sentence imposed by Judge Allred.*

It is apparent from these facts that appellant's service of his unexpired term for violation of parole could not begin until the sentence for his second offense had terminated. It is equally apparent that *after the termination of Judge Allred's sentence* the only justification for holding him in prison was the unexpired term on account of which the Parole Board had issued its warrant. As the Supreme Court has said:

"The prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence."[4]

The crucial question, therefore, is—When did Judge Allred's sentence terminate? The Parole Board and warden. construed it as an unconditional four year term and delayed service of the parole violator's warrant on that theory. If this construction of the sentence is not a proper one the imprisonment which the appellant served after the actual termination of Judge Allred's sentence must be credited on appellant's unexpired term. The reason is that in such a case the unexpired sentence would be the only justification for that imprisonment. The suggestion that imprisonment in the interim between the expiration of Judge Allred's sentence and the service of a warrant by the Parole Board would be attributable to no sentence whatever is the sort of perversion of justice which this Court in a different situation repudiated in the following language: "The Government's brief suggests, in the vein of The Mikado, that because the first sentence was void appellant 'has served no sentence but has merely spent time in the penitentiary;' that since he should not have been imprisoned as he was, he was not imprisoned at all. The brief deduces the corollary that his non-existent punishment cannot possibly be 'increased.' As other corollaries it might be suggested that he is liable in quasi-contract for the value of his board and lodging, and criminally liable for obtaining them by false pretenses. We cannot take this optimistic view."[5]

For these reasons the validity of appellant's confinement depends upon construing Judge Allred's sentence as an unconditional four year term. The majority opinion so construes it, using a simple method which may be designated as interpretation by subtraction. It is first decided that the condition in the sentence that it should run concurrently with the unexpired term must be subtracted because it is void. That leaves an unconditional sentence as a remainder. After arriving at an unconditional four year term by this method the majority opinion regretfully concludes "Tippitt (the appellant) is very clearly

3 Zerbst v. Kidwell, supra, note 1.
4 Hill v. United States ex rel. Wampler, 1936, 298 U.S. 460, 465, 56 S.Ct. 760, 762, 80 L.Ed. 1283.

5 King v. United States, 1938, 69 App. D.C. 10, 12–13, 98 F.2d 291, 293.

serving a sentence which Judge Allred did not intend that Tippitt should serve." This result, says the opinion, is a "tragic fact for Tippitt."

I had heretofore thought that such tragedies were impossible in law because no written instrument, be it a contract, will, decree or judgment, can properly be enforced contrary to its admitted intention and purposes.[6] Suppose that in the second paragraph of a contract to sell an automobile there is a written condition that the automobile must be new and equipped with new tires. Assume the condition to be void because of wartime regulations. If the method of interpretation by subtraction adopted by the majority were used the buyer would be compelled to pay the contract price for a second-hand automobile. Neither can a judgment be construed in this fashion. Liberty is as important as property, and it can hardly be argued that there is a special rule of interpretation for criminal sentences which permits the court to enforce them against their plain intent.[7]

There can be no question that in this case the condition is so intertwined with and so much a part of the sentence that it cannot be separated without in effect resentencing the prisoner to a different term than the one actually imposed on him. Therefore, if the condition fails for want of authority the portion of the sentence which is subject to the condition must fail for the same reason. Hence, if the issue were properly before us we would be compelled to hold that so much of Judge Allred's sentence as was intended to run concurrently with the confinement for violation of parole was void.[8]

What is the result? Where a sentence is given in excess of the power of the court the better view is that only the excess is void.[9] Therefore, if we interpret Judge Allred's sentence to mean what it says, the part affected by the illegal condition is void and the legal term is approximately two years.[10] When that term has expired, service of the sentence for revocation of parole must be held to begin, since the only justification for confinement of the

---

[6] "In construing the provisions of a judgment the usual canons of construction should be applied." I Freeman on Judgments, § 76, p. 132 (5th Ed., 1925).

[7] "A sentence must be construed the same as any other judgment and the usual canons of construction should be applied." Fredericks v. Snook, 5 Cir., 1925, 8 F.2d 966, 967.

[8] "When the jury have rendered their verdict, the court has to pronounce the proper judgment upon such verdict—and the law, in prescribing the punishment, either as to the extent, or the mode, or the place of it, should be followed. If the court is authorized to impose imprisonment, and it exceeds the time prescribed by law, the judgment is void for the excess. If the law prescribes a place of imprisonment, the court cannot direct a different place not authorized; it cannot direct imprisonment in a penitentiary when the law assigns that institution for imprisonment under judgments of a different character. If the case be a capital one, and the punishment be death, it must be inflicted in the form prescribed by law. Although life is to be extinguished, it cannot be by any other mode. The proposition put forward by counsel that if the court has authority to inflict the punishment prescribed, its action is not void, though it pursues any form or mode which may commend itself to its discretion, is certainly not to be tolerated." In re Bonner, 1894, 151 U.S. 242. 258, 14 S.Ct. 323, 326, 38 L.Ed. 149.

[9] "There has been a great deal said and written, in many cases with embarrassing looseness of expression, as to the jurisdiction of the courts in criminal cases. From a somewhat extended examination of the authorities we will venture to state some rule applicable to all of them, by which the jurisdiction as to any particular judgment of the court in such cases may be determined. It is plain that such court has jurisdiction to render a particular judgment only when the offense charged is within the class of offenses placed by the law under its jurisdiction; and when, in taking custody of the accused, and in its modes of procedure to the determination of the question of his guilt or innocence, and in rendering judgment, the court keeps within the limitations prescribed by the law, customary or statutory. When the court goes out of these limitations its action, to the extent of such excess, is void. Proceeding within these limitations, its action may be erroneous but not void." Id., 151 U.S. 256–257, 14 S.Ct. 325, 38 L.Ed. 149. See Annotation, 1932. 76 A.L.R. 468.

[10] The result in Hammerer v. Huff, 1939, 71 App.D.C. 246, 110 F.2d 113, is not inconsistent with the above statement. In that case the District Court imposed an unconditional sentence for a second offense on a prisoner at large on parole. He orally indicated that the sentence should run concurrently with the unexpired term for violation of parole. Obviously such an oral direction to the Parole Board should

prisoner is the parole violator warrant lodged with the warden.

The result reached by the majority is made the more unnecessary because it is clear that the District Court in Texas still has the power to resentence the prisoner by substituting a valid sentence for the void one. It may even increase that sentence without running counter to the rule against double jeopardy. But that power is in that court.[11] It is not the function of this court to resentence the appellant.

The opinion closes with a message of "real sympathy for Tippitt, the victim of good intentions expressed all too unfortunately." The court is apparently sorry that it must make appellant vicariously atone for the mistake of the Texas court. The opinion suggests that perhaps the Board wished to make a test case "thus compelling Tippitt to assume the temporary (but painful) role of a juristic guinea-pig for jurisdictional experimentation." If all this be true, it is suggested that such unpleasant facts of judicial life be kept from our prisoners. They do not fit into a picture of justice under law. Some day the prisoner

must be released and asked to respect the law in the future.

The opinion concludes by advising the prisoner that he may perhaps escape the admittedly unjust result imposed by the obiter dicta of the majority by an appeal for executive clemency. But I had always thought the courts rather than the executive are the guardians of liberty against arbitrary judicial action. It is true that there are cases where courts have failed in that function. But these are not the brighter pages of the law. Rather are they examples where the courts have fallen into the vice ordinarily attributed to "bureaucrats", allowing red tape to bind them to an absurd conclusion. In this case there is no procedural red tape to unwind. All we need do is to construe Judge Allred's sentence according to its plain intention.

I, therefore, concur that the petition should be dismissed for want of jurisdiction in the hope that if this case comes before a court with jurisdiction to try the issue of the validity of appellant's confinement, that issue will not be unduly obscured by the obiter dicta against which this dissenting opinion is written.

be disregarded except perhaps as gratuitous advice. In its opinion this court was induced by stipulation of the government to incorporate the oral direction into the written sentence. However, the question which we are considering here, whether

such a condition made the sentence partially void, was not argued or discussed.

[11] Murphy v. Massachusetts, 1900, 117 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711; King v. United States, supra, note 5.