**Edward J. FITZGERALD et al.,**
**Petitioners,**

**v.**

**Maurice J. SIGLER et al., Respondents.**

**Civ. A. No. 73–2018.**

United States District Court,
District of Columbia.

March 13, 1974.

20. 7 U.S.C. § 608c(17).

21. *See* Rojko, The Demand and Price Structure for Dairy Products, USDA Tech.Bull. 1168, at p. 1 (1957).

Robert Plotkin, Washington, D. C., Richard C. Hand, Arlington, Va., Dina Lassow, Washington, D. C., for petitioners.

Steven W. Snarr, Asst. U. S. Atty., Washington, D. C., for United States Board of Parole.

George T. Masson, Jr., Asst. Corp. Counsel, Washington, D. C., for District of Columbia.

MEMORANDUM AND ORDER

CORCORAN, District Judge.

I

This action is before the Court on petitioners' amended petitions for writs of habeas corpus and mandamus. Jurisdiction is premised upon 28 U.S.C. §§ 2241 and 1361, respectively.

Each petitioner is an inmate at the District of Columbia Correctional Complex at Lorton, Virginia; each is incarcerated there pursuant to a sentence imposed by a judge of this Court; and

each has lodged against him a detainer from the United States Board of Parole based upon an unexecuted parole violator warrant.

The respondents are the members of the United States Board of Parole (the Board), the Parole Executive of the Board (Johnston), the Director of District of Columbia Department of Corrections (Jackson), and the Superintendent (warden) of the Lorton Correctional Complex (Strickland).

Petitioners seek a declaration that they have been denied their rights to a speedy parole revocation hearing in contravention of the due process clause of the Fifth Amendment to the Federal Constitution and the recent Supreme Court pronouncements of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L. Ed.2d 656 (1973). Further petitioners move this Court to issue an order quashing their parole violator warrants and discharging them from future custody pursuant to such warrants, or, alternatively, ordering the respondent Board to hold speedy parole revocation hearings.

The failure to grant them a speedy parole revocation hearing, according to the petitioners, affects them adversely in two important respects:

(1) In the case of each petitioner the sentencing judge in this Court ordered the sentence imposed by him to run concurrently with any other sentence being served by the petitioner. The petitioners allege that by deferring action on the parole violation warrant and thus deferring the running of the original unexpired sentence until completion of the intervening sentence imposed by this Court, the Board is causing the unexpired sentence to run consecutively to the intervening sentence imposed by a judge of this Court, thus frustrating the clear intention of that sentencing judge; and

(2) the petitioners assert that because the detainers have been placed against them the District of Columbia prison officials arbitrarily deny them access to certain rehabilitative programs, in violation of the requirements of due process and equal protection.

Pursuant to *Fed. R. Civ. P.* 23, the petitioners seek to have their suit declared a class action on behalf of two classes: (1) all prison inmates who have unexecuted parole violator warrants issued by the respondent Board of Parole and pending against them; and (2) all inmates at Lorton who have detainers lodged against them, and who are therefore subject to a so-called Policy 5000 of the District of Columbia Department of Corrections, which, in petitioners' view, arbitrarily denies them the opportunity to participate in rehabilitative programs.[1]

II

We look first at the status of each petitioner.

A. *Fitzgerald*

Petitioner Fitzgerald is presently serving a sentence entered August 31, 1972, of from 3 to 12 years for a robbery conviction in the United States District Court for the District of Columbia. This sentence was stated to "run concurrently with any other sentence that you might be exposed to."

Previously, in November, 1963, Fitzgerald had been convicted of bank robbery in the United States District Court for the Middle District of Pennsylvania. In that case he was sentenced to a term of 10 years, but was released after serving 7 years and 1 month on mandatory good-time release pursuant to 18 U.S.C.

1. Since this case was taken under advisement, counsel for petitioners and the district respondents have stipulated that Policy 5000 has been superseded by Department Notice 4090, issued over the signature of respondent Jackson. Notice 4090 by its terms, is binding upon the District of Columbia and affords the petitioners all relief requested as to this aspect of the case. Accordingly, for purposes of the case, claims based upon Policy 5000 have been mooted.

§ 4164, as if paroled. On July 27, 1970, the respondent Board issued a parole violator warrant alleging that Fitzgerald had failed to report for supervision.

After his arrest on the charge which led to his 1972 robbery conviction in this Court, the warrant was lodged as a detainer against him and was updated to include the allegation of committing an offense while on parole. Since the 1972 conviction and sentencing in this Court, the detainer has remained lodged against Fitzgerald. There was a dispositional review[2] of his case, following which the Board decided to allow the detainer to stand without further action. Fitzgerald was notified that action would be taken on the detainer at the time he is taken into custody as a federal violator when released from his present incarceration.

### B. *Kelley*

Petitioner Kelley is presently serving a sentence of from 3 to 15 years imposed by the United States District Court for the District of Columbia on August 8, 1972, after conviction for armed robbery. The sentencing judge directed that the sentence was to run concurrently with any other sentence then being served.

Kelley had previously been convicted on January 21, 1963, of armed robbery of a post office in the United States District Court for the Eastern District of Missouri, and sentenced to a term of 25 years. After serving eight years of

that sentence, Kelly was released on parole on June 3, 1971.

On June 23, 1972, Kelley was convicted in the Superior Court of the District of Columbia of attempted robbery and sentenced to a term of 1 to 3 years.

On July 7, 1972, a parole violator warrant was lodged against Kelley as a detainer by the Board. It was based upon the conviction of attempted robbery in Superior Court and the pending armed robbery charge in this Court, *supra*. Since August, 1972, the detainer, now based on the two convictions in this and the Superior Court has remained lodged against Kelley at Lorton. Following dispositional review[3] of the case, the Board decided to allow the detainer to stand and, as in the case of Fitzgerald, notified Kelley that action would be taken on the detainer at the time he is taken into custody as a federal violator when released from his present incarceration.

### C. *Byrd*

Petitioner Byrd is presently serving a sentence of from 4 to 20 years imposed for an armed robbery conviction entered July 6, 1972, in the United States District Court for the District of Columbia. This sentence was to run concurrently with any other sentence being served.

Byrd had previously been convicted of robbery in this Court on May 28, 1965, and sentenced to a term of 3 to 12 years. After serving 6 years and 1 month, he was paroled on June 14, 1971. Since the July, 1972, armed robbery con-

---

2. The Affidavit of Maurice H. Sigler, Chairman, United States Board of Parole, defines "dispositional review" in this manner:

When the Board requests that a parole or mandatory release violator warrant be placed as a detainer against an alleged parole or mandatory release violator in custody as a result of a new criminal offense, the Board periodically conducts dispositional reviews of the warrant to determine whether the detainer should be allowed to remain in effect or whether the warrant should be withdrawn or executed. The initial dispositional review of a case is instituted by a request of the prisoner or on the Board's own initiative. It is presently the practice of the Board to conduct subsequent dispositional reviews of each case on an annual basis. If the warrant is executed, the Board will take action to conduct a prompt revocation hearing. In the dispositional review, *which is based on the written record only*, the Board specifically analyzes the factors enumerated in the attached Parole Form H–3(a), Summary by Case Analyst-Dispositional Review, in light of the prisoner's record as a whole . . . . (Emphasis supplied.)

3. *See* note 2 *supra*.

viction and sentencing, a detainer has remained lodged against Byrd while at Lorton. The Board, following dispositional review [4] of the case, notified Byrd that the detainer would stand and that no action would be taken on the detainer until the time he is taken into custody as a federal violator when released from his present incarceration.

### III

In their answer and return to the order to show cause, the Federal respondents challenge the jurisdiction of this Court to grant relief by way of habeas corpus on the grounds (a) that the "custody" requirement is lacking since it is based only on a parole violator detainer; and (b) that the District of Columbia is an inappropriate forum for adjudicating these petitioners' claims.

### A. Custody

■ The Board's contention that a parole violator detainer does not provide the necessary "in custody" requirement for federal habeas corpus relief is clearly without merit. It is well settled that the "prematurity doctrine" of *McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L. Ed. 238 (1934), which would have precluded any relief for petitioners, has been discarded by the Supreme Court in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488–489, 93 S. Ct. 1123, 35 L.Ed.2d 443 (1973); *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Thus petitioners' detainers are restraints and the "in custody" requirement is met. *See also Sutherland v. District of Columbia Board of Parole*, 366 F.Supp. 270 (D.D. C., 1973). *Cf. Hensley v. Municipal Court*, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

### B. Forum

■ The Court finds that the District of Columbia is the appropriate and most convenient forum in which to adjudicate the claims of these individual petitioners. Since Lorton is the penal institution commonly utilized by prisoners convicted in the District of Columbia, and since each of these petitioners is presently incarcerated there pursuant to a sentence imposed by a judge of this Court, these petitioners have the requisite significant contacts with this forum to seek in it a writ of habeas corpus. Hayes v. Chairman, United States Board of Parole, 160 U.S.App.D.C. ——, 492 F.2d 669 (1974), *citing Braden v. 30th Judicial Circuit Court of Kentucky*, *supra*, and *Eisel v. Secretary of the Army*, 155 U.S.App.D.C. 366, 477 F.2d 1251 (1973).

In *Sanders v. Bennett*, 80 U.S.App.D. C. 32, 148 F.2d 19 (1945), the Court held that only a court having jurisdiction over the warden of the penitentiary where the prisoner is detained could grant a writ of habeas corpus to that prisoner. The Court further held

> since the rule is a practical one based on common sense administration of justice we have held that the courts in the District of Columbia may issue writs of habeas corpus directed to those in direct charge of penal institutions of the District which happen to be located just outside its borders. This is because it is the plain duty of the District to adjudicate matters arising out of the conduct of its own institutions. *Id.* at 33, 148 F.2d at 20.

Although *Sanders* was to some extent modified three years later by *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), in which the Supreme Court restricted habeas corpus jurisdiction to that district within whose territory the petitioner was confined, *Ahrens*, in turn, has been significantly modified by *Braden, supra*. *Braden* held that the issuing district court need only have jurisdiction over the petitioner's custodian, thereby reviving the precedential value of *Sanders v. Bennett, supra*.

---

4. *See* note 2 *supra*.

Read literally, the language of § 2241(a) requires nothing more than the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, *even if the prisoner himself is confined outside the court's territorial jurisdiction.* Braden v. 30th Judicial Circuit Court of Kentucky, *supra,* 410 U.S. at 495, 93 S.Ct. at 1130 (emphasis supplied).

*Braden* established a balancing-of-interests test, "in terms of traditional venue considerations," which looks to the "most desirable forum for the adjudication of the (habeas) claim." *Id.* at 493, 93 S.Ct. at 1129. The *Braden* rule has been adopted by this Circuit in *Eisel v. Secretary of the Army, supra. See also Orito v. Powers,* 479 F.2d 435 (7th Cir. 1973); *Henry v. Warner,* 357 F.Supp. 495, 502 (C.D.Cal.1973). While in the case under consideration, concurrent jurisdiction may exist in both the District Court for the Eastern District of Virginia and this Court, *see Braden, supra,* 410 U.S. at 499 n.15, 93 S.Ct. at 1131, traditional venue considerations dictate that the District of Columbia is the more desirable forum for adjudication of habeas claims by prisoners convicted and sentenced in the District Court for the District of Columbia, *Cf. Strait v. Laird,* 406 U.S. 341, 92 S.Ct. 1693, 32 L. Ed.2d 141 (1972).

Accordingly, this Court exercises jurisdiction over the petitioners' custodian, the Federal respondents. All the material events concerning their intervening offenses, convictions and sentencings took place in the District; the pertinent records are more likely to be found here; and this forum is presumably more convenient for the respondents and, at the least, no less convenient for the petitioners.

## IV

The District of Columbia respondents also assert that this Court lacks jurisdiction to entertain the claims of these petitioners. They allege various grounds, *viz.,* (a) that jurisdiction in this Court is precluded by *D.C.Code Ann.* § 11–921(a)(3)(A)(iii) and § 16–1901 (1973), which declare that petitions for writs of habeas corpus directed to any person other than Federal officers and employees shall be filed in the Superior Court of the District of Columbia; (b) that respondent Jackson is an improper party since he is not the immediate custodian of petitioners; (c) that this Court should not interfere with internal prison management; (d) that to require hearings, as petitioners seek, whenever a classification review results in leaving the classification unchanged, would unnecessarily burden the administrative process of reviewing classifications.

### A. *Place of Confinement*

■ *D.C.Code Ann.* § 16–1901(a) (1973) provides that a person be "committed, detained, confined, or restrained from his lawful liberty within the District" before a writ of habeas corpus may be entertained in any court in the District of Columbia. That section has been construed literally by the District of Columbia Court of Appeals in I. B. v. District of Columbia Dept. of Hum. Res., S. S. Adm., 287 A.2d 827, 828–829 (D.C.Ct.App.1972), to mean that a petitioner must be confined within the territorial jurisdiction of the District. The District of Columbia Court of Appeals read *Ahrens v. Clark, supra,* to mandate such a holding. But as is pointed out in Part III *supra, Ahrens* was modified by *Braden v. 30th Judicial Circuit Court of Kentucky, supra,* and is no longer dispositive. While this Court recognizes that the District of Columbia Court Reorganization Act of 1970 [5] established the District of Columbia Court of Appeals as the "highest court of the Dis-

5. Pub.L.No. 91–358, Tit. I, 84 Stat. 473 (1970).

trict of Columbia," *D.C.Code Ann.* § 11–102 (1973), and that the "greatest deference (should be accorded its) decisions," *see* M.A.S., Inc. v. Van Curler Broadcasting Corp., 357 F.Supp. 686, 690 (D.D.C.1973), in light of the intervening Supreme Court decision in *Braden* we are constrained to find that I. B. v. District of Columbia Dept. of Hum. Res., S.S. Adm., *supra,* does not govern the case at bar, and that we are bound to follow *Braden.* Accordingly, the Court finds that petitioners are "confined" within the District.

### B. *Federal Jurisdiction*

■ According to *D.C.Code Ann.* § 11–921(a)(3)(A)(iii) and § 16–1901(b), (c), only petitions for writ of habeas corpus directed to Federal officers and employees may be heard by this Court, and all other such writs must be filed in the Superior Court of the District of Columbia. The District of Columbia respondents, Jackson, the Director of the D. C. Department of Corrections, and Strickland, Superintendent (warden) of the Lorton Correctional Complex, maintain that those sections deprive this Court of jurisdiction over them. Strickland's reliance on those provisions is, in the opinion of this Court, misplaced, for it is well settled in the Federal courts that a custodian of a federal prisoner is the "keeper of the United States," Randolph v. Donaldson, 13 U.S. (9 Cranch) 76, 86, 3 L.Ed. 662 (1815). For purposes of § 16–1901(b), then, the actual custodian of these petitioners, Strick-

land, is an "officer or employee of the United States." Reid v. Covert, 351 U. S. 487, 489–490, 76 S.Ct. 880, 882, 100 L.Ed. 1352 (1956).[6] *See also* Bland v. Rodgers, 332 F.Supp. 989, 990 (D.D.C. 1971).

■ The Court, however, agrees that the respondent Jackson, the Director of the District of Columbia Department of Corrections, is not a proper party to this litigation since he is not the immediate custodian of the petitioners. *Sanders v. Bennett, supra,* 80 U.S.App.D.C. at 33, 148 F.2d at 20. Accordingly, the amended petition for writ of habeas corpus must be dismissed as to respondent Jackson, and the show cause order discharged.[7]

### C. *Prison Management*

■ The District of Columbia asserts that this Court should not interfere with what it views as "internal prison management." Such a contention, in light of the facts of this case and the relevant case law, has no merit. *See Bland v. Rodgers, supra,* 332 F.Supp. at 992–993 and cases cited therein.

### D. *The Administrative Burden*

■ The Court accords little weight to respondents' last contention that the requested hearings by petitioners would unnecessarily burden the administrative process of reviewing prisoner classifications. Such a view, as will be seen *infra,* ignores the plain mandate of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

6. In citing *Reid supra,* the Court is not unaware that it was later reversed on the merits. Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957). The first *Reid* case is cited herein, however only for its jurisdictional statement concerning the federal officer-employee issue. In any event, in the opinion of the Court, both *Reid* cases are supportive of the proposition that a custodian of federal prisoners is for limited purposes a federal officer or employee. That conclusion becomes increasingly clear when one realizes that the second *Reid* case, in 1957, affirmed the District Court's granting of habeas corpus relief to a federal prisoner in the District of Columbia Jail.

Therefore, in both *Reid* cases, for it to reach the merits, the Court in each instance must have found the warden of the District of Columbia Jail to be a federal officer or employee for purposes of 28 U.S.C. § 1252.

7. Respondent Jackson, however, as Director of the District of Columbia Department of Corrections, would be a proper party in petitioners' mandamus action, were the Court to find that form of relief applicable in the case at bar. However, the Court has found the Policy 5000 issue to be moot, and therefore, the Court need not reach the mandamus question.

## V

We turn now to a consideration of the remedial action requested by the petitioners.

Each petitioner seeks one of three remedies; namely:

(1) An order quashing the detainer. Such an order, of course, would effectively preclude any imposition by the Board of petitioners' original, unexpired sentences.

(2) An order requiring the Board to hold a speedy parole revocation hearing meeting the standards prescribed by *Morrissey v. Brewer, supra.* If that course is followed, "the parole board has a wide choice of dispositional [8] alternatives," Shelton v. United States Board of Parole, 128 U.S.App.D.C. 311, 319, 388 F.2d 567, 575 (1967). It may, as *Shelton* delineates: (a) withdraw the detainer, thus wiping out any allegation of parole violation; or (b) revoke parole, thereby causing the unexpired portion of the original sentence to run concurrently with the intervening sentence; or (c) continue the detainer, thus withholding revocation until the intervening sentence has been completed. This latter alternative usually results in the serving of consecutive sentences: *i. e.*, the intervening sentence is followed by service of the unexpired sentence. *Id.*

(3) An order requiring the Board to run concurrently the intervening and unexpired sentences, thus complying with, it is asserted, the instructions of the sentencing judges who in fact imposed such sentences.

█ The Board's authority to issue warrants and lodge detainers is wholly statutory. *See* 18 U.S.C. § 4205 (1970). To implement its authority, the Board has promulgated certain regulations. 28 C.F.R. § 2.40 (1973). It is well settled that the Board is vested with discretionary power. Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938); *Shelton v. United States Board of Parole, supra.* That discretion, however, is not "immune from judicial overview." *Id. Cf.* Hyser v. Reed, 115 U.S.App.D.C. 254, 269, 318 F.2d 225, 240 (1963).

█ We look first to the claim embodied in the third alternative, *supra*, that the Board of Parole has usurped the power of the sentencing judge by preventing the intervening and unexpired sentences from running concurrently. However, the case law will not support such an assertion and under the doctrine of *stare decisis* we are constrained to hold to the contrary. Tippitt v. Wood, 78 U.S.App.D.C. 332, 140 F.2d 689 (1944); Hammerer v. Huff, 71 App.D.C. 246, 110 F.2d 113 (1939). *See also* Cox v. Feldkamp, 438 F.2d 1, 3 (5th Cir. 1971); Edwards v. United States, 422 F.2d 856, 858 (6th Cir. 1970); Moore v. Smith, 412 F.2d 720, 724 (7th Cir. 1969); Mock v. U. S. Board of Parole, 120 U.S.App.D.C. 248, 250, 345 F. 2d 737, 739 (1965) (Fahy, J.).[9] *Cf. Zerbst v. Kidwell, supra*; Noll v. Board of Parole for the District of Columbia, 89 U.S.App.D.C. 206, 191 F.2d 653 (1951) (Bazelon, J.).

In *Tippitt*, as in the instant case, the petitioner had committed a criminal offense while on parole from a previous conviction. For the new offense, the district court imposed a sentence that required the intervening sentence and the unexpired portion of the original sentence to run concurrently with each other. The appellate court in *Tippitt*, however, ruled the sentence invalid and

---

8. *Compare* note 2 *supra.* "Dispositional" as used in *Shelton* clearly contemplates the final revocation hearing mandated by Morrissey v. Brewer, *supra*, whereas "dispositional" as defined by the Board falls far short of the *Morrissey*-type hearing. See discussion *infra.*

9. *But see* Shelton v. United States Board of Parole, *supra*, 128 U.S.App.D.C. at 318–319

n. 12, 388 F.2d at 574–575 n. 12, where the court indicated, seemingly inconsistent with and without reference to *Tippitt, Hammerer* or *Mock*, that when a district judge sentences a person to a consecutive term, the Board is "thereby precluded from any dispositional alternative involving what is essentially concurrent sentence treatment."

held that the sentencing judge had no power to make the intervening sentence run concurrently with the original, unexpired sentence or, moreover, to tell the Board how it must act in light of the intervening sentence. 78 U.S.App.D.C. at 335, 140 F.2d at 692.

In *Hammerer*, on similar facts, the court held that the "trial judge in imposing the second sentence had no power to cause it and the unexpired portion of the first sentence to run concurrently." 71 App.D.C. at 249, 110 F.2d at 116.

And in *Cox v. Feldkamp, supra*, 438 F.2d at 3, the court held:

> The Parole Board has the administrative power to decide whether or not to allow a sentence for an offense committed while on parole to run concurrent with time to be served on parole violation. The power of the Board is exclusive. (Citation omitted.)

Accordingly, the Court denies relief under petitioners' third request, *supra*.

 The first alternative, however, has more merit. For it is now beyond peradventure that, consistent with due process, a parolee must be accorded a final hearing within a reasonable time after he has been taken into custody to determine whether he has, in fact, violated his parole conditions and whether his parole should be revoked. *Morrissey v. Brewer, supra*; Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *Cf. Shelton v. United States Board of Parole, supra*, 128 U.S. App.D.C. at 318, 388 F.2d at 574.

The opinion in *Morrissey* was handed down June 29, 1972. Each petitioner herein received his intervening sentence for a criminal conviction arising out of criminal conduct while on parole status, in either July or August 1972. To date none of these petitioners has been tendered a final parole revocation hearing as required by *Morrissey*. When the Court in *Morrissey* suggested that a two month delay between the hearing date and the date the parolee is taken into custody might be reasonable, 408 U.S. at 488, 92 S.Ct. at 2604, it left little room for doubt that a delay of over one and one-half years, as in this case, would be unjustified, and it follows that "it is now too late for (respondents) to cure (their) error by affording (petitioners) a revocation hearing." *Sutherland v. District of Columbia Board of Parole, supra*, 366 F.Supp. at 272.

The respondents would distinguish the instant case from *Morrissey* by limiting the latter solely to its own facts, which did not deal with a parolee in custody by reason of a criminal conviction. However, that the Court was mindful of such a parolee is indicated by a remark made in the course of delineating the limits of the due process hearing: "Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." 408 U.S. at 490, 92 S.Ct. at 2605. To this Court the plain import of that language is that the mandate of a prompt, final revocation hearing is not obviated, but only that the content of such a hearing might be altered, by the fact of a conviction while on parole. For instance, the first-stage preliminary hearing required by *Morrissey* would surely be met by the fact of the intervening conviction and sentence. But according to *Morrissey*, there would have to be a second-stage final hearing in all cases and within a reasonable time to satisfy due process.

In view of the above, then, it seems clear that the Board no longer has any discretion as to whether to grant a prompt parole revocation hearing. Such discretion as is lodged in the Board is related to what disposition to make in each case after and as a result of the hearing. But there must be a final hearing.

As noted above the facts of this case indicate that the Board did not tender such hearings to these petitioners within a reasonable time after they were taken into custody. The detainers and warrants must be quashed.[10]

10. *But see* Cook v. United States Attorney General, 488 F.2d 667 (5th Cir. 1974).

## IV

Petitioners also seek to have their suit certified as a class action under *Fed. R. Civ. P.* 23 and Local Rule 1–13(b). They claim relief for two alleged classes, namely, (1) all prison inmates who have unexecuted parole violator warrants issued by the United States Board of Parole pending against them; and (2) all persons subject to Policy 5000.

 The Court is of the opinion that class relief in the fact situation here presented is inappropriate and must be denied. As to the first proposed class, it is too broad to be considered in a habeas context which invariably requires consideration of facts unique to the individual seeking the writ and consequently deprives that individual of standing as a representative of a proposed class. We need only point out for example, in the instant case, that the relief granted to the individual petitioners, conditioned as it is upon their significant contacts with this forum and other individual considerations, *see* Part III *supra*, cannot be made available to all prison inmates against whom parole violator warrants have been lodged, if for no other reason than that this Court cannot extend its territorial habeas jurisdiction to reach all such persons. Further, as an example of the inappropriateness of class treatment in the context of the particular case, absent a holding that *Morrissey* is to be applied retroactively—a question this Court is not called upon to, and does not, decide—those prisoners as to whom a detainer was lodged prior to *Morrissey* are clearly not in the same class as these petitioners whose detainers were updated after *Morrissey*.

 As to the second proposed class, *i. e.*, those inmates subject to the provisions of Policy 5000, *see* note 1 *supra*. The question has been mooted.

## VII

Accordingly, it is this 13th day of March, 1974,

*Ordered* that the unexecuted parole violator warrant lodged against the petitioner Fitzgerald by reason of his conviction in this Court in Criminal Case No. 71–1044 be, and the same is hereby, quashed; and it is

*Further ordered* that the unexecuted parole violator warrant lodged against petitioner Kelley by reason of his conviction in Superior Court Criminal Case No. 16534–72A and his conviction in this Court in Criminal Case No. 72–1102 be, and the same is hereby, quashed; and it is

*Further ordered* that the unexecuted parole violator warrant lodged against petitioner Byrd by reason of his conviction in this Court in Criminal Case No. 72–34 be, and the same is hereby, quashed; and it is

*Further ordered* that the respondent Strickland shall withdraw from the petitioners' files the detainers lodged against them as a result of the foregoing unexecuted parole violator warrants; and it is

*Further ordered* that the amended petition for a writ of habeas corpus be, and the same is hereby, dismissed as to respondent Jackson, and the order to show cause be, and the same is hereby, discharged as to him; and it is

*Further ordered* that the motion to certify this action as a class action pursuant to *Fed. R. Civ. P.* 23 be, and the same is hereby, denied.