**Thompson B. HAWKINS–EL,**
**#127 566**

**v.**

**McLindsey HAWKINS, Warden.**

**Civ. No. K–74–1088.**

United States District Court,
D. Maryland.

Feb. 20, 1975.

Supplemental Opinion March 11, 1975.

---

Thompson B. Hawkins-El, pro se.

Francis B. Burch, Atty. Gen. and George A. Eichhorn, Asst. Atty. Gen., for defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

■ Hawkins-El, presently confined in the Maryland Penitentiary, seeks habeas corpus relief from this Court for the second time.[1] Hawkins-El alleges that the District of Columbia Board of Parole, charging a possible parole violation by Hawkins-El, filed a detainer against him at the Maryland Penitentiary on March 13, 1974, and that he was notified of that detainer on March 14, 1974.[2] Hawkins-El further alleges that on March 20, 1974 he made a "request for Final Disposition" pursuant to 3 Md.Ann.Code art. 27, § 616S[3] and gave it to the defendant Warden who apparently forwarded it to the District of Columbia Board of Parole. Hawkins-El also alleges that the District of Columbia Board of Parole acknowledged receipt of his letter by a communication dated April 13, 1974 and addressed to Mr. Lehrman W. Dotson, Hawkins-El's Classification Officer at the Maryland Penitentiary. Finally he alleges that since that date the District of Columbia Board of Parole has not acted in any way upon his request for final disposition and that because more than 180 days have passed since he requested such disposition,[4] this Court is compelled by

1. Hawkins-El previously sought habeas corpus relief in connection with the state conviction for which he is presently being confined in the Maryland Penitentiary. Relief was denied without prejudice due to Hawkins-El's failure to exhaust his state remedies. Hawkins-El v. Hawkins, Civil No. K-74-550 (September 18, 1974). A copy of that opinion has been placed in the official court file in this case. Herein, Hawkins-El seemingly does not challenge further that Maryland conviction.

2. Hawkins-El alleges and the record seems to indicate that the notification he received was an "*Intrastate* Detainer Notification" (emphasis supplied) pursuant to 3 Md.Ann.Code art. 27, § 616S (1971 Replacement Vol.). Since the detainer was placed on Hawkins-El by the District of Columbia, it would appear that he should have been notified pursuant to the "*Interstate* Agreement on Detainers" (emphasis supplied) which has been enacted in both Maryland and the District of Columbia. 3 Md.Ann.Code art. 27, §§ 616A–616R (1971 Replacement Vol.) ; D.C.Code §§ 24–701—24–705. However, that apparently inadvertent error is of no relevance with regard to the issues presented in this case.

3. In so doing Hawkins-El was seemingly following the procedure provided in the *Intrastate* Detainer provision of the Maryland Code. 3 Md.Ann.Code art. 27, § 616S(a) (1971 Replacement Vol.) (emphasis supplied). See n. 2 *supra.* Since a somewhat similar procedure is provided with regard to an interstate detainer (see n. 4 *infra*), and the confusion was not the fault of Hawkins-El, the latter's said request is certainly entitled to be, and is treated herein, as a request for final disposition as to the interstate detainer filed by the District of Columbia Board of Parole.

4. Article III of the Interstate Agreement on Detainers, 3 Md.Ann.Code art. 27, § 616D (1971 Replacement Vol.) provides in part that:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he

Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270 (D.D.C. 1973) [5] to dismiss the same with prejudice. That latter case would not appear applicable herein.

■ The District of Columbia Board of Parole is not the defendant named herein. Rather, the defendant is the Warden of the Maryland confinement institution in' which Hawkins-El is currently confined. What Hawkins-El is challenging herein is not the legality or the duration of the conviction for which he is presently confined, but rather the effect of the District of Columbia detainer upon the conditions of Hawkins-El's confinement in Maryland. As such he is not, despite his assertion to the contrary, entitled to habeas corpus relief, in connection with which he would seemingly have to exhaust his state remedies in the courts of Maryland pursuant to 28 U.S.C. § 2254, see Preiser v. Rodriquez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), before proceeding in this Court, but rather, if he is entitled to any relief in this case, his entitlement is under 42 U.S.C. § 1983. Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Cooper v. Lockhart, 489 F.2d 308, 310 (8th Cir. 1973). And that is true even though Hawkins-El has himself styled his suit herein as one in which he is seeking habeas corpus relief. Wilwording v. Swenson, supra 404 U.S. at 251, 92 S.Ct. 407, 30 L.Ed.2d 418.

In Cooper v. Lockhart, supra, Judge Lay held that the State of Arkansas was denying due process to a prisoner in an Arkansas confinement institution by continuing the effects of a State of Michigan detainer placed upon that prisoner and filed with that Arkansas con-finement institution. In that case the prisoner had requested and had been denied a speedy hearing in Michigan. Cooper v. Lockhart, supra 489 F.2d at 311. In that case the parties stipulated that

* * * the following punitive consequences during imprisonment in Arkansas flow from the placement of the detainer by the Arkansas Department of Corrections. The petitioner is:

(1) Ineligible to participate in the vocational training program because of a federal regulation attached to the granting of federal funds;

(2) Ineligible to attain the classification of trustee;

(3) Ineligible to participate in the meritorious furlough program because only trustees can take part;

(4) Ineligible to participate in the work release program.

* * *

Judge Lay noted that the "Arkansas Attorney General conceded in oral argument * * * [that] a prisoner with a detainer placed on him simply 'exists' in the Arkansas prison system.[10]"

10. Punitive consequences of a detainer placed on the prisoner vary from one institution to another. The generally recognized ones include the following restrictions: the inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons (i. e., honor farms or forestry camp work); (4) ineligible for trustee status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions within the correctional sys-

shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

* * * * *

5. As to Sutherland, see also Fitzgerald v. Sigler, 372 F.Supp. 889 (D.D.C.1974), and Jones v. Johnston, 368 F.Supp. 571 (D.D.C. 1974). Appeals are pending in the United States Court of Appeals for the District of Columbia in both of those latter two cases.

tem, which includes the removal of any possibility of transfer to an institution more appropriate for youthful offenders; (8) not entitled to preferred prison jobs which carry higher wages and entitle them to additional good time credits against their sentence; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities. *See generally* Goldfarb & Singer, Redressing Prisoners' Grievances 39 Geo.Wash.L.Rev. 175, 228–230 (1970); Jacob & Sharma, Justice After Trial: Prisoners' Need for Legal Services in the Criminal-Correctional Process, 18 Kan. L.Rev. 493, 578–589 (1970); Tuttle, Catch 2254; Federal Jurisdiction and Interstate Detainers, 32 U.Pitt.L.Rev. 489 (1971); Note, Detainers and the Correctional Process, 16 Wash.U.L.Q. 417 (1966).

As one commentator has observed:

Many of the system's inadequacies stem from the fact that it was developed by administrators for administrators, with little interference from courts or legislatures. It is, therefore, not surprising that convenience and expediency are its main concerns, rather than protection of the rights and welfare of individual detainees. Lack of regulation and meager or nonexistent requirements for filing a detainer leave the system open to much abuse, adding to the gravity of the problem.

Note, 16 Wash.U.L.Q. 417, 436 (1966).

It was further noted that:

[B]oth the detainee and society stand to gain from prompt adjudication. The uncertainty about the detainee's future will be removed, and intelligent planning of a program of rehabilitation will become possible. The cooperation of the inmate should be substantially increased for the same reasons.

*Id.* at 437.

The primary goal in solving the detainer problem is to insure to the extent possible, identical treatment of one accused of multi-jurisdictional offenses, and one accused of the same crimes against a single jurisdiction.

*Id.* at 439.

Cooper v. Lockhart, *supra* at 313–14.

In this case the record does not disclose what consequences, if any, are visited upon a prisoner in the Maryland Penitentiary and in the Maryland prison system. Accordingly, the respondent is hereby required to inform this Court, on or before the *6th* day of March, 1975, with regard thereto. After this Court

receives that information, this Court will further consider the issues presented in this case and the impact thereon of the holdings and views set forth in Cooper v. Lockhart, *supra,* and other cases including, *inter alia,* Small v. Britton, 500 F.2d 299 (10th Cir. 1974), Burnett v. United States Board of Parole, 491 F.2d 966 (5th Cir. 1974); Cook v. United States Attorney General, 488 F.2d 667 (5th Cir. 1974); Gaddy v. Michael, 384 F.Supp. 1390 (W.D.N.C.1974).[6]

## SUPPLEMENTAL MEMORANDUM AND ORDER

Attached is a letter dated March 6, 1975 from counsel for respondent in response to this Court's request for additional information as stated in a Memorandum and Order filed in this case on February 20, 1975. The second paragraph of the said attached letter speaks for itself and in the opinion of this Court provides sufficient reason for the application of the doctrine of Cooper v. Lockhart, 489 F.2d 308 (8th Cir. 1973). Accordingly, the respondent is hereby Ordered to address, within ten (10) days of the date of this Memorandum and Order, a communication to the District of Columbia Board of Parole informing that Board of this Court's Order in this case, and affording to that Board the opportunity to hold a parole revocation hearing on or before May 1, 1975. If such a hearing is held and the parole is revoked with a request by the District of Columbia for Hawkins-El's ultimate release to it, Maryland is at liberty to continue the detainer if it so chooses. In the event no such hearing is held, or in the event the District of Columbia does not request Hawkins-El's ultimate return to it, Maryland shall provide Hawkins-El with the same opportunities given to other persons not subject to a detainer. If the detainer is removed, Maryland may, if it desires, notify the District of Columbia of Hawkins-El's release date. Whether the District of Co-

6. *See also* Phifer v. State of Maryland, et al., 395 F.Supp. 831 (Memorandum and Order filed February 20, 1975).

lumbia Board of Parole may proceed after any given date to hold a parole revocation hearing is for it to determine subject to orders of a court having jurisdiction over it. *See* Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270 (D.D.C.1973). *See also* Fitzgerald v. Sigler, 372 F.Supp. 889 (D.D.C.1974), appeal docketed sub nom. Byrd v. Sigler, No. 74–1517, D.C.Cir., May 20, 1974; Jones v. Johnston, 368 F.Supp. 571 (D.D.C.1974), appeal docketed, No. 74–1424, D.C.Cir., April 16, 1974.