**Ashley GADDY, State and Federal Prisoner, Plaintiff,**

v.

**George MICHAEL, in his official capacity as Parole Officer of the United States Board of Paroles, et al., and the United States Board of Paroles, Defendants.**

**No. C–C–73–299.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

Aug. 16, 1974.

Michael S. Scofield, Asst. U. S. Atty, Charlotte, N.C., for defendants.

## ORDER

McMILLAN, District Judge.

Ashley Gaddy, plaintiff, is now in the federal correctional institution at Danbury, Connecticut. In the form of a suit for declaratory judgment under 28 U.S. C. Secs. 2201 and 2202 and for injunctive relief, he seeks an end to liability for revocation of a federal parole upon the grounds that a detainer which the United States Board of Paroles filed against him on April 13, 1973, with the North Carolina Department of Correction based on North Carolina convictions was and is invalid because he was not given a timely hearing on his parole revocation.

On April 3, 1970, Gaddy was sentenced to four years in federal prison by

the United States District Court for the Western District of Missouri, after convictions on multiple charges of uttering counterfeit obligations. Pursuant to 18 U.S.C. Sec. 4163, he was released on October 17, 1972, with 423 days remaining to be served should parole ever be revoked and his full sentence re-imposed. Less than five months later he was arrested and incarcerated in Mecklenburg County, North Carolina, on multiple charges of passing bad checks, which charges resulted in convictions on March 14 and 15, 1973.

On April 10, 1973, a parole violator's warrant was issued by the United States based upon the March convictions; a detainer based on the warrant was filed with North Carolina authorities on April 13, 1973. On April 20, 1973, Gaddy was convicted in a North Carolina court of a misdemeanor, escape, with his sentence to run concurrently with the bad check sentences; in May 1973 he sustained yet other convictions on worthless check charges.

On February 8, 1974, after this suit was commenced, a new federal detainer was filed against Gaddy, because of his having been transferred to a prison in the Eastern District of North Carolina. The old detainer was formally withdrawn on March 8, 1974, which action left only the February 8, 1974 detainer in force. The February 8, 1974 detainer was based on the April 10, 1973 parole violator's warrant. On May 28, 1974, North Carolina released Gaddy to the custody of the United States pursuant to the violator's warrant; the warrant was executed; and Gaddy was taken before Mr. Sidney T. Noell, of the United States Probation Office in Charlotte, for a "probable cause" hearing on the same day. Probable cause for parole revocation was found; Gaddy was subsequently transferred to the federal correctional institution in Danbury, Connecticut, where he is scheduled to receive a second hearing on August 19, 1974, as to the revocation itself. If Gaddy's parole is revoked and the full remainder of his sentence imposed, he will have to serve

time until a date between March 18, 1975, and July 18, 1975, depending on his behavior.

Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), requires two hearings (or at least a two-stage hearing) in connection with parole revocations. The first hearing is to determine whether probable cause exists to find that some condition of parole has been violated. The second, or "revocation" hearing, is to determine whether or not to revoke or change the terms of the parole, and, if it is revoked, how much of this remainder of the original term shall be served. See 18 U.S.C. Sec. 4207.

The United States belatedly accorded Gaddy the first of these two hearings, on May 28, 1974, and the second hearing is scheduled for August 19, 1974. The United States agrees that he is entitled to the second hearing, but contends that this hearing need not be given at any particular time; and under 28 C.F.R., Sec. 2.40, it in fact is the policy and practice of the Board not to have the second hearing until the state sentence has been satisfied, if it is the state conviction which is the basis for the proposed federal parole revocation.

The rules of the Federal Board of Paroles, 28 C.F.R. Sec. 2.37(c), contain a note referring to a Parole Board directive, No. 5, 32 F.R. 15014, October 31, 1967, as follows:

> Following the interview, the Board may take any action relative to the warrant appropriate under the statutes and regulations of the Board. The dispositional interview may be constructed as a revocation hearing *in those cases where the Board does not withdraw its warrant but determines that the violator term shall begin to run concurrently with the new sentences then being served.* (Emphasis added.)

It is thus apparent that one of the options which the Parole Board considers at the revocation hearing is whether if the parole is revoked the term served for

the violation shall be served concurrently with the new sentences then being served.

█ *Morrissey* held that a two month lapse between the time when Morrissey was taken into custody for parole violation and the time of the second hearing was not unreasonable. Gaddy has been imprisoned 13 months on the basis of new state convictions which imposed the same restraint on him that the first hearing did in Morrissey; and the failure to have the second hearing within a reasonable time from the issuance of the parole violator's warrant has deprived Gaddy of the opportunity to serve the remainder of his federal sentence concurrently with his state sentence (if at this late date his parole is in fact revoked.) Gaddy has the same fundamental interest in his liberty as of the time his state sentence expires that Morrissey had before his parole revocation began.

In Cooper v. Lockhart, 489 F.2d 308 (8th Cir. 1973), the Eighth Circuit Court of Appeals held that one of the elements of due process required in parole revocation proceedings was a timely hearing; that failure to give such a hearing to an incarcerated prisoner may be a "grievous loss"; and that an Arkansas prisoner should not be required to wait until he had served his Arkansas term before having a parole revocation hearing by Missouri on the validity of Missouri's revocation of his parole. The Eighth Circuit recognized that "Dim memories and disappearance of witnesses can well affect the outcome of a parole revocation hearing as much as any criminal trial. Delay in any procedure may well affect its fundamental fairness." 489 F.2d 308, 312–313. The court pointed out that even where the violator has been convicted of a later crime and is in jail, he is harmed by the delay because parole officials have not within a reasonable time considered the option of allowing the violator term to run concurrently with the new sentence.

Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), also recognizes the fact that delay (in the trial of a case) is harmful to an incarcerated prisoner because "the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." 393 U.S. 374, 378, 89 S.Ct. 575, 577.

Two recent cases in the District of Columbia have been decided on the same principle, that a revocation hearing must be tendered within a reasonable time after the parolee is taken into custody, Fitzgerald v. Sigler, 372 F.Supp. 889 (D.D.C. 1974) (Judge Corcoran) and Sutherland v. District of Columbia, 366 F.Supp. 270 (D.D.C. 1973).

█ Gaddy's first hearing was not held until May 28, 1974, which is thirteen months after the detainer was filed. That is an unreasonable time, but is harmless because, as Judge Corcoran concluded in the *Fitzgerald* case, the United States' information that Gaddy had been convicted in the state court should establish probable cause that he had violated the parole.

█ The delay from April 1973 to August 1974 in holding the second hearing, however, can not be considered reasonable, and the court calls upon and relies upon the various reasons so well outlined by Judge Lay in the *Cooper* case and by Judge Gesell in the *Sutherland* case. The violator's interest in a prompt hearing is of constitutional dimension. Delay fades and perishes evidence of mitigation. Witnesses may die or forget. The opportunity for concurrent service of the violator sentence and the sentence already being served is lost. Of additional significance is the fact that the detainer based upon the parole violator warrant causes the prisoner to lose prison privileges and educational and other advancement and rehabilitative opportunity and it may cause a prisoner to be kept in close custody and to restrict his accumulation of gain time and actually extend his period of actual confinement. The question whether a

particular prisoner is a good or bad candidate for liberty or incarceration is beside the point.

The question of relief is subject to some debate. Judge Gesell in *Sutherland* held that five months' delay was too long for a revocation hearing, and that it was too late to cure the error, 366 F.Supp. 270, 272, and that the warrant must be withdrawn. Judge Corcoran on the other hand held only that the petitioner was entitled to a prompt hearing.

█ It seems to me that sixty days after the filing of the parole violator's warrant by the Parole Board is a reasonable time for the Parole Board to conduct its revocation hearing and render a decision. In this case the parole violator's warrant was filed by the United States on April 10, 1973, and a reasonable time to complete a hearing and issue a decision would have expired by the 10th of June, 1973.

█ Although no one can say today what the Board *would have* decided in May of 1973, the United States should be estopped from denying that a prompt hearing would have resulted in concurrent sentence of the federal parole violator sentence and the North Carolina sentence. It may be that the Board will decide at its August 1974 hearing that no revocation at all is proper, but that will be a decision for the Board to make.

It is therefore ordered, that the federal warrant and detainer be withdrawn and canceled unless petitioner is given a due process hearing on the question of the revocation of his federal parole within thirty days after the filing of this order, and that the Parole Board shall subtract from the potential 423 days left in the original sentence all of the days from June 10, 1973, until the decision of the Board on the revocation question has been communicated to Gaddy.

Defendants shall file a memorandum of compliance with this order by September 15, 1974.