**Joseph F. GAY**

v.

**UNITED STATES BOARD OF PAROLE.**

**Civ. A. No. 74–0538–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

May 5, 1975.

Joseph F. Gay, pro se.

Charles L. Beard, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner, a federal parolee, brings this habeas corpus action attacking the failure of the Federal Parole Board to provide him with a prompt parole revocation hearing after learning of his intervening state court conviction. Jurisdiction is conferred by 28 U.S.C. § 2255. This matter comes before the Court on petitioner's motion for judgment on the pleadings pursuant to Rule 12, F.R.Civ. P. Since the government has declined to respond and has indicated, instead, that it will rest on the memorandum filed with its "Return on Order to Show Cause Pursuant to Writ of Habeas Corpus," this matter is ripe for disposition.

Petitioner was convicted in this Court of bank robbery in 1970, served three years, and was paroled July 9, 1973. While out on parole he was arrested on a burglary charge in February 1974, and was convicted of burglary in June 1974. Shortly after his arrest on the burglary charge, the Federal Parole Board issued a parole violator's warrant and thereupon lodged a detainer against him with the Commonwealth of Virginia. In March 1974, petitioner wrote his parole board requesting a revocation hearing, but his request was apparently ignored. On the 10th of December 1974, while incarcerated at Chesterfield Correctional Unit No. 13, Gay petitioned this Court in a writ of mandamus for removal of the federal detainer on the grounds that he had been denied a prompt revocation hearing. Petitioner was due to be released from state confinement on the burglary conviction on January 31, 1975. The state authorities refused to release him on this release date because of the federal parole violator's detainer, and petitioner was transferred from the Chesterfield Correctional Unit to the Richmond City Jail where he was kept incarcerated until released by this Court on his own recognizance, March 14, 1975. During the period of his incarceration in the city jail, Federal Parole Board officials made no effort to have petitioner returned to a federal institution, and petitioner received no communication from federal authorities about the timing of this revocation hearing. The Court has no great confidence that Gay would not still be sitting in the Richmond City Jail had it not granted his motion for bail on March 14, 1975.

Petitioner claims that he has been denied due process because he was not given a prompt parole revocation hearing once the federal detainer was lodged against him. The Court concludes that under principles enunciated in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), petitioner has been denied due process and it shall enter judgment for the petitioner.

### I.

■ Morrissey v. Brewer contemplates a two-step parole revocation procedure. First, the parolee is entitled to a preliminary hearing in the nature of a probable cause hearing within a reasonable time after he has been arrested and detained. This hearing serves the purpose of determining "whether there is probable cause or reasonable grounds to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id.* at 485, 92 S.Ct. at 2602. Before the final decision on parole, the parolee, if he or she so desires, is entitled to a full scale hearing with a panoply of procedural protections.[1] This hearing must be held within a reasonable time after the parolee has been taken into custody.[2] The

---

1. The parole revocation hearing procedural protections are enumerated in Morrissey v. Brewer, *supra,* at 487–89, 92 S.Ct. 2593.

2. Petitioner argues that he is "in custody" for purposes of obtaining his right to a parole revocation hearing once the detainer is lodged

Supreme Court has suggested that in most circumstances a lapse of two months would not be unreasonable.

## II.

■ In determining whether some process is due an individual who is subjected to "grievous loss" by state or government action, courts have balanced the individual interest protected by the Fifth and Fourteenth Amendments against the governmental interests which, it is asserted, will be burdened by affording an individual threatened by government action with some procedural protections. *E. g.*, Drown v. Portsmouth School District, 435 F.2d 1182, 1184 (1st Cir. 1970); Landman v. Royster, 333 F.Supp. 621, 651–52 (E.D.Va.1971). Where the individual interest is weightier than the governmental interest in summary adjudication, due process is a constitutional requirement.

The Court shall apply this traditional due process analysis to the question whether an alleged federal parole violator who is incarcerated pursuant to a state charge or a state court conviction has a right to reasonably expeditious application of the Morrissey v. Brewer protections.

Alleged federal parole violators who, like Gay, are incarcerated in a state correctional institution have a substantial interest in obtaining a parole revocation hearing within a reasonable period of time following the commission of the alleged violation.

■ First, the presence of the federal detainer imposes substantial constraints upon a parolee's liberty even when the parolee is incarcerated on a state charge. If the parolee is incarcerated while awaiting trial on the state charges, he may be unable to make bond because of the detainer. If the parolee is convicted on the state charge and incarcerated in the state correctional system, he may be denied the privilege of participating in certain rehabilitative programs, such as furlough and work release, because of the presence of the federal detainer. A prisoner with a federal detainer can never be assigned to trusty status, nor assigned to a job where the level of custody is low. Word v. North Carolina, 406 F.2d 352, 354 (4th Cir. 1969). The presence of a federal detainer "unquestionably" affects a state prisoner's eligibility for parole. *Id.* Furthermore, once a federal detainer has been lodged against a state prisoner, that prisoner usually will not be given his unconditional release at the time of expiration of the state sentence, as was the case with petitioner Gay. In sum, the filing of a detainer causes an incarcerated parolee to suffer "grievous loss" sufficient to trigger due process protection. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Peele v. Sigler, 392 F.Supp. 325 (E.D. Wash., Oct. 23, 1974); Cf. Cooper v.

---

against him. The Parole Board responds that the parolee who has a federal detainer lodged against him while in state confinement is not in federal custody and, therefore, not entitled to a parole revocation hearing until he is returned to the actual physical custody of the federal authorities. The Court concludes, contrary to the Parole Board's theory, that federal custody obtains once the federal detainer is lodged against the parolee. A Virginia prisoner is denied access to certain institutional privileges, such as furlough and work release programs, because of the imposition of the detainer, see *infra* at 1377–1378, and, like Gay, does not regain his freedom upon service of the state sentence. In sum, a state prisoner/federal parolee with a federal detainer lodged against him has, for all practical purposes, been "arrested and detained," Morrissey v. Brewer, *supra*, 408 U.S. at 485, 92 S.Ct. 2593, by the federal authorities and is therefore in custody for purposes of habeas corpus jurisdiction. Furthermore, the Supreme Court recently permitted a state prisoner to challenge a detainer lodged against him even though removal of the detainer would not immediately secure his release from state confinement. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); Sutherland v. District of Columbia Board of Parole, 366 F.Supp. 270 (D.D.C.1973).

Lockhart, 489 F.2d 308, 313–15 (8th Cir. 1973).

Second, with the passage of time, memories dim and witnesses disappear so that the alleged parole violator may be prejudiced by the Parole Board's failure to provide him with a reasonably prompt revocation hearing. *Id.* at 312–13; Sutherland v. District of Columbia Board of Parole, *supra,* 366 F.Supp. at 272.

■■ Third, when the Parole Board declines to hold the hearing until after the alleged violator has served his state sentence, the alleged violator loses the opportunity of having his federal sentence run concurrently with his state sentence.[3] No parole violator, of course, has the right to have his revoked federal sentence run concurrently with his state sentence, but the parolee should at the very least have the right to concurrent sentence consideration, *cf.* Bradford v. Weinstein, 519 F.2d 728 (4th Cir., Nov. 22, 1974), and the Parole Board's policy of deferring the revocation hearing until after expiration of the state sentence arbitrarily and capriciously deprives a parolee of this opportunity. Gaddy v. Michael, 384 F.Supp. 1390, 1393 (W.D. N.C., 1974) (MacMillan, J.).

Fourth, a prompt revocation hearing would prevent the recurrence of the present appalling circumstance in which an alleged federal parole violator with a federal detainer lodged against him was reincarcerated in a city jail immediately upon release from state confinement and permitted to languish there for six weeks until finally released on his own recognizance by this Court. Despite petition-

er's repeated pleadings to the Court and the Parole Board's counsel and despite the Court's informal suggestion to the Parole Board's counsel that petitioner be given a prompt revocation hearing upon his release from state confinement on the state conviction, petitioner's situation was apparently ignored by the Parole Board until this Court's intervention on March 14.

■ Finally, decisional law commands that an alleged federal parole violator be given a revocation hearing within in a reasonable period of time after his return to "custody." Morrissey v. Brewer, *supra,* 408 U.S. at 488, 92 S.Ct. 2593 (1972). Since this Court has held that federal "custody" for purposes of an alleged parole violator's right to a Morrissey v. Brewer hearing obtains once a federal detainer is lodged against a parolee who is in state custody, see note 2, *supra,* the question for decision is whether the thirteen month lapse between the lodging of the detainer and petitioner's release on bail in March 1975[4] constituted a violation of petitioner's right to a reasonably prompt parole revocation hearing. The Supreme Court has suggested that a two month delay in holding a hearing after a parolee has been taken into custody would not be unreasonable. *Id.* With this suggestion the Supreme Court implicitly established a zone of reasonableness around the two month benchmark. While a four to six month delay might not be unreasonable given the appropriate circumstances and a thirteen month delay would surely not be unreasonable if the delay were due to the parolee's own actions, for example his flight or escape, the Court is con-

---

3. Furthermore, the Parole Board retains the discretion not to revoke an offender's parole and to allow him to remain at liberty if it believes that reincarceration will not further the ultimate goal of rehabilitation. Although non-revocation may not have been a live possibility in Gay's case, Gay and other alleged violators have a stake in obtaining a hearing in order to present evidence in mitigation and on rehabilitative potential even when the violation has been established by a court of law. Sutherland v. District of Columbia

Board of Parole, *supra,* 366 F.Supp. at 272. For this class of violator, a prompt revocation hearing would preclude the needless loss of state prison privileges and would obviate situations, like petitioner's, where the alleged violator is allowed to languish in a city jail for six weeks following his release from state confinement on the state conviction.

4. Petitioner was finally given the first-step Morrissey v. Brewer preliminary hearing on April 14, 1975.

strained to conclude that the thirteen month delay that took place in Gay's case was clearly outside the "zone of reasonableness" and therefore violative of Gay's right to a reasonably prompt revocation hearing. Gaddy v. Michael, *supra,* 384 F.Supp. at 1393; Sutherland v. District of Columbia Board of Parole, *supra,* 366 F.Supp. at 272; Fitzgerald v. Sigler, 372 F.Supp. 889, 898 (D.D.C.1973). Whatever the state of the law before *Morrissey,* it is now clear that the Parole Board has no discretion to deny a federal parole violator in state custody a reasonably prompt revocation hearing. The only discretion remaining is "related to what disposition to make in each case after and as a result of the hearing." *Id.* Furthermore, the Court must disabuse the Parole Board of its misapprehension, as expressed by its counsel at petitioner's bond hearing, that since it had already decided to revoke petitioner's parole and since therefore a hearing would not be necessary, it had no obligation to provide petitioner with a prompt hearing. If the concept of due process is to have any meaningful content at all, the hearing must precede the administrative decision and provide the basis for that decision. See Morrissey v. Brewer, *supra,* 408 U.S. at 487–88, 92 S.Ct. 2593. To hold otherwise would exalt arbitrariness and capriciousness at the expense of the rule of law.

■ The Parole Board, on the other hand, has not drawn the Court's attention to any substantial governmental interest served by its policy of deferring the parole revocation hearing until after expiration of the state sentence. Since analysis of the competing interests indicates that the parolee's interest in obtaining a prompt revocation hearing substantially outweighs the Parole Board's interest in deferring the revocation hearing until the expiration of the state sentence, the Court concludes that the due process clause commands that an alleged federal parole violator incarcerated in a state correctional facility be given a reasonably prompt parole revocation hearing once a federal detainer is lodged against him.[5]

### III.

■ The Court finds that petitioner has been prejudiced by the Parole Board's failure to provide him with a prompt Morrissey v. Brewer hearing: the failure of the Parole Board to provide a prompt revocation hearing deprived petitioner of the opportunity for Parole Board consideration of its option of ordering the federal sentence, if revoked, to run concurrent with the state sentence; the presence of the detainer "unquestionably" forecloses access to state prison privileges and rehabilitative programs[6] and created the situation whereby petitioner was "misplaced" in the Richmond City Jail for six weeks. Accordingly, the Court concludes that petitioner is entitled to relief. Petitioner prays that the violator's warrant be quashed and that he be allowed to remain at liberty on parole. Although there is authority for granting the relief requested, Fitzgerald v. Sigler, *supra,* 372 F.Supp. 889; Jones v. Johnston, 368 F.Supp. 571 (D.D.C.1974), the Court believes that the prejudice suffered by petitioner as a result of the Parole Board's unconstitutional practice can be adequately cured by awarding him credit toward his federal sentence and toward

---

5. The government has called the Court's attention to two Circuit Court cases that have held that an alleged federal parole violator who is serving a state court sentence under a conviction which forms the basis of the alleged violation has no right to a prompt revocation hearing. See Cook v. Attorney General, 488 F.2d 667 (5th Cir. 1974); Small v. Britton, 500 F.2d 299 (10th Cir. 1974). With all due respect to those two Courts, this Court believes that they have given insufficient attention to the "grievous loss" suffered by state prisoners as a result of the lodging of federal detainers and have therefore reached an incorrect determination of what process is due parole violators in those circumstances. See Pavia v. Hogan, 386 F. Supp. 1379 (N.D.Ga.1974).

6. Word v. North Carolina, 406 F.2d at 354.

the period which he must serve before being eligible for re-parole consideration for the time spent in state custody on the burglary charge and conviction from the date that the detainer was initially lodged against him in February 1974 to his release on March 16, 1975. It may well be that the Parole Board would not have ordered petitioner's federal sentence, if revoked, to run concurrently with the State sentence, but the Parole Board is now estopped from denying that petitioner would not have received a concurrent sentence since it, by its unconstitutional conduct, foreclosed the opportunity for concurrent sentence consideration. Gaddy v. Michael, *supra,* 384 F.Supp. at 1394.

An order consistent with this memorandum will issue.