Lyman T. SHEPARD, Appellant,

v.

**UNITED STATES BOARD OF PAROLE, Appellee.**

No. 999, Docket 76–2021.

United States Court of Appeals, Second Circuit.

Argued May 10, 1976.

Decided Sept. 7, 1976.

Phylis Skloot Bamberger, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for appellant.

Mitchell B. Dubick, Atty., Dept. of Justice, Washington, D. C. (Richard L. Thornburgh, Asst. Atty. Gen., George W. Calhoun, Atty., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before KAUFMAN, Chief Judge, and SMITH and MANSFIELD, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Lyman Shepard, a federal parolee serving a state prison sentence for a crime committed while on parole, appeals an order entered by the United States District Court for the Northern District of New York,

James T. Foley, Chief Judge, denying his habeas corpus petition seeking relief in absence of prompt parole revocation hearing. We reverse and remand.

## I.

In July of 1972, on conviction for interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312, Shepard was sentenced under the Youth Corrections Act to an indeterminate term of imprisonment not to exceed six years. On April 18, 1974, he was paroled. On December 17, 1974 he was sentenced in a New York state court for attempted second-degree robbery to a term of up to four years' imprisonment. He has been in a New York correctional facility since December of 1974.

In January, 1975, the federal parole board ("the Board") filed at the New York facility as a detainer against Shepard a parole violation warrant based on his state conviction. Shepard requested a prompt parole revocation hearing to present evidence in mitigation of the charges underlying the warrant. But, in accordance with its regulations, after reviewing Shepard's case, the Board allowed the detainer to stand without affording him the requested hearing, promising only to re-examine his case in one year.

In November of 1975 Shepard filed his habeas corpus application. In it he alleged that, solely because of the detainer lodged against him, he was prevented from participating in educational and temporary release programs and from benefiting from other privileges generally available to inmates. He also claimed that the Board's delay in affording him a parole revocation hearing was impairing his ability to present evidence in mitigation of the charges underlying the detainer. Shepard contended that the Board's failure to afford him a prompt revocation hearing violated his right to due process. The application was denied by the district court, and Shepard appealed.

---

1.  28 U.S.C. § 2241(c)(3) states in pertinent part: The writ of habeas corpus shall not extend to a prisoner unless . . .

.   .   .   .   .

## II.

The court below had jurisdiction to entertain the instant habeas petition under 28 U.S.C. § 2241. The lodging of the parole violation warrant as a detainer against Shepard satisfied § 2241(c)(3)'s "in custody" requirement.[1] See, e. g., *Jones v. Johnston*, 534 F.2d 353, 357 (D.C.Cir., 1976).

## III.

On May 14, 1976, four days after oral argument before us, the statutory and regulatory framework challenged in Shepard's habeas application was replaced by the Parole Commission and Reorganization Act, Pub.L.No.94–233, and regulations promulgated in accordance therewith. Prior to May 14, the Board's treatment of Shepard was regulated primarily by 28 C.F.R. § 2.53:

(a) In those instances where the prisoner is serving a new sentence in an institution, the warrant may be placed there as a detainer. Such prisoner shall be advised that he may communicate with the Board relative to disposition of the warrant, and may request that it be withdrawn or executed so his violator term will run concurrently with the new sentence. Should further information be deemed necessary, the Regional Director may designate a hearing examiner panel to conduct a dispositional interview at the institution where the prisoner is confined. At such dispositional interview the prisoner may be represented by counsel of his own choice and may call witnesses in his own behalf, provided he bears their expenses. He shall be given timely notice of the dispositional interview and its procedure.

(b) Following the dispositional review the Regional Director may:

(1) Let the detainer stand;

(2) Withdraw the detainer and close the case if the expiration date has passed;

(3) *He is in custody in violation of the Constitution or laws or treaties of the United States* . . .

.   .   .

(3) Withdraw the detainer and reinstate to supervision; thus permitting the federal sentence time to run uninterruptedly from the time of his original release on parole or mandatory release;

(4) Execute warrant, thus permitting the sentence to run from that point in time. If the warrant is executed, a previously conducted dispositional interview may be construed as a revocation hearing.

(c) In all cases, including those where a dispositional interview is not conducted, the Board shall conduct annual reviews relative to the disposition of the warrant. These decisions will be made by the Regional Director. The Board shall request periodic reports from institution officials for its consideration.

In accordance with this regulation, after reviewing Shepard's case but without affording him an evidentiary hearing, the Board allowed his detainer to stand and promised to re-examine his case in one year. Shepard claims that due process entitled him to an evidentiary hearing. The Board, on the other hand, contends that the procedures required by 28 C.F.R. § 2.53 were constitutionally sufficient, especially when considered in light of Shepard's right under what was then 18 U.S.C. § 4207 to a revocation hearing if he was subsequently "retaken" upon his parole violation warrant.[2] Shepard's position finds support in some of the circuits: *Jones v. Johnston*, 534 F.2d 353 (D.C. Cir., 1976); *United States ex rel. Hahn v. Revis*, 520 F.2d 632 (7th Cir. 1975); *Cleveland v. Ciccone*, 517 F.2d 1082 (8th Cir. 1975); the Board's in others: *Reese v. United States Board of Parole*, 530 F.2d 231 (9th Cir., 1976); *Colangelo v. United States Board of Parole*, 517 F.2d 1404 (6th Cir., 1975); *Gaddy v. Michael*, 519 F.2d 669 (4th Cir., 1975); *Orr v. Saxbe*, 517 F.2d 1399 (3d Cir., 1975); *Small v. Britton*, 500 F.2d 299

(10th Cir. 1974); *Cook v. United States Attorney General*, 488 F.2d 667 (5th Cir.), *cert. denied*, 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974). The Supreme Court has granted certiorari in *Moody v. Daggett*, 424 U.S. 942, 96 S.Ct. 1408, 47 L.Ed.2d 347 (1976), to resolve the conflict.

## IV.

■ Recent cases have made it plain that due process entitles a parolee such as Shepard to an evidentiary hearing prior to the final decision to revoke his parole.

> There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation.

*Morrissey v. Brewer*, 408 U.S. 471, 487–88, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484 (1972).

The Board nevertheless argues that *Morrissey* does not establish Shepard's right to a hearing, pointing out that unlike Shepard, neither of the parolees in *Morrissey* had been convicted of committing a crime while on parole and quoting the Court to the effect that:

> Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime.

408 U.S. at 490, 92 S.Ct. at 2605.

This language may limit the issues, but does not do away with the hearing requirement.

> The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation sug-

---

**2.** 18 U.S.C. § 4207 provided in pertinent part:

A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof.

gest that violation does not warrant revocation.

408 U.S. at 488, 92 S.Ct. at 2603. *Gagnon v. Scarpelli,* 411 U.S. 778, 787–90, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), reaffirmed the due process right to hearing even after a conviction and went one step further, finding a due process right to be represented at a revocation hearing by appointed counsel when parolee's indigence, complex and difficult claims to mitigation, and other circumstances dictate.

## V.

■ The timing of the required hearing is in dispute, however.

*Morrissey* and *Gagnon* do not determine whether Shepard is entitled to a revocation hearing during his intervening prison sentence. It is nevertheless clear that during his intervening incarceration he does have a due process right to contest in some meaningful manner the parole violation warrant lodged against him as a detainer.

The Board "often" makes the decision not to revoke where a parolee such as Shepard has served a prison sentence for the intervening offense underlying the warrant pending against him.[3] But when the Board does not reach this decision until after the parolee has been transferred to a federal facility, his confinement there is unwarranted. Due process protects parolees from such unwarranted confinement. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

The Board relies on the Court's statement in *Morrissey* that a two-month lapse between a parolee's reimprisonment and his final revocation hearing was not unreasonable. 408 U.S. at 488, 92 S.Ct. 2593.[4] The parolees in *Morrissey,* however, had not been sentenced to an intervening term of imprisonment. Consequently, prior to the commencement of the two-month period of incarceration sanctioned there, the Board had had virtually no notice of the need for a revocation hearing and the parolees had not already served prison terms for the misconduct charged in their parole violation warrants. By contrast, in a case such as Shepard's, the Board has no comparable excuse for delay, and the possibility of further unjustified incarceration appears to be considerably greater.

Shepard's several interests in obtaining the withdrawal of the warrant before the end of his intervening confinement are cognizable under the due process clause.

■ The Board does not dispute Shepard's claim that, solely because of the parole violation warrant lodged against him, he has been denied valuable privileges generally available to inmates, including participation in educational and temporary release programs. And the tendency of state prison authorities, in general, to treat inmates subject to federal detainers as ineligible for confinement in less restrictive institutions, more desirable work assignments, educational release programs, work release programs, furloughs and other rehabilitative programs is well established. See, *e. g., Cooper v. Lockart,* 489 F.2d 308, 313–14 & n. 10 (8th Cir. 1973) and authorities cited therein; *Gay v. United States Board of Parole,* 394 F.Supp. 1374, 1377 (E.D. Va. 1975); S.Rep. No. 1356, 91st Cong., 2d Sess. (1970), U.S.Code Cong. & Admin.News 4864, 4866. Furthermore, a pending parole violation detainer can delay an inmate's parole from his intervening term of imprisonment. See, *e. g., Jones v. Johnston,* 534 F.2d 353, 364 (D.C. Cir., 1976); *United States ex rel. Hahn v. Revis,* 520 F.2d 632, 637 (7th Cir. 1975); *Cooper v. Lockart,* 489 F.2d 308, 314 n. 10 (8th Cir. 1973); *Gay v. United States Board of Parole,* 394 F.Supp. 1374, 1377 (E.D. Va.1975). An inmate's loss of eligibil-

---

3. Under the regulations that became effective on May 14, 1976, "[t]ime served on a new state or federal sentence [must] be credited as time in custody." 28 C.F.R. § 2.21(b)(2).

4. The new parole act requires merely that the revocation hearing be held within ninety days of the parolee's "retaking," which according to the Board occurs when he is delivered into custody to begin serving his violator term. 18 U.S.C. § 4214(c).

ity for rehabilitative programs or the postponement of his parole can constitute a "grievous loss" of his "liberty" or "property" within the contemplation of the due process clause. *Cardaropoli v. Norton,* 523 F.2d 990, 995 (2d Cir. 1975).[5]

Moreover, Shepard has an interest in obtaining the Board's consideration of evidence allegedly mitigating the charges underlying his parole violation warrant before this evidence is significantly impaired by the passage of time. *E. g., Jones v. Johnston,* 534 F.2d 353, 361–362 (D.C. Cir. 1976); *United States ex rel. Hahn v. Revis,* 520 F.2d 632, 637 (7th Cir. 1975); *Cooper v. Lockart,* 489 F.2d 308, 312–13 (8th Cir. 1973); *Gay v. United States Board of Parole,* 394 F.Supp. 1374, 1378 (E.D. Va.1975); *United States ex rel. Vance v. Kenton,* 252 F.Supp. 344, 346 (D.Conn.1966).

Finally,

The parolee also has a definite, personal interest in being relieved of uncertainty as to what his future will be . . . [T]he Supreme Court recognized in *Smith v. Hooey* [393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969)] that the anxiety and depression resulting from a detainer based on a pending criminal indictment may have a severely corrosive effect on rehabilitation. We have no reason to believe that the effects are any less significant when the detainer is lodged because of a parole violation.

*Jones v. Johnston,* 534 F.2d 363 (D.C. Cir., 1976) (footnotes omitted). See also *Cooper v. Lockart,* 489 F.2d 308, 314–15 & nn. 10 and 11 (8th Cir. 1973).[6]

In short, the existence on file of Shepard's parole violation detainer during his confinement by New York State subjects him to "grievous loss." See *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), *citing Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). We therefore conclude that this detainer should not have been allowed to stand "in the absence of basic elements of rudimentary due process," *Cardaropoli v. Norton,* 523 F.2d 990, 995 (2d Cir. 1975).

## VI.

The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." All that is necessary is that the procedures be tailored, in light of the decision to be made, to "the capacities and circumstances of those who are to be heard" to insure that they are given a meaningful opportunity to present their case.

*Matthews v. Eldridge,* 424 U.S. 319, 349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (citations omitted).

5. *Cardaropoli* held that due process requires that a federal prisoner be afforded a hearing prior to his designation as a "Special Offender" on the ground that designation as such generally " 'delays or precludes social furloughs, release to half-way houses and transfers to other correctional institutions' " and " 'in some cases . . . may bar early parole.' " 523 F.2d at 994. The court reasoned:

The Special Offender classification works serious alteration in the inmate's conditions of confinement because it hinders or precludes eligibility for these important rehabilitative programs. We therefore conclude that the marked changes in the inmate's status which accompany the designation create a "grievous loss", *Morrissey v. Brewer* . . . and may not be imposed in the absence of basic elements of rudimentary due process.

523 F.2d at 995.

6. Shepard makes the additional argument that "refusal of the Board to give a parole violation hearing at a time when it can exercise the full range of its discretion . . . deprives the parolee of an opportunity to obtain the extent of concurrency which he is entitled to receive and which is appropriate in his case." See also *Jones v. Johnston,* 534 F.2d 353, 369 (D.C. Cir. 1976). But, although this line of argument may apply in other situations, it does not here since Shepard was originally sentenced pursuant to the Youth Corrections Act and thus, under provisions applicable to individuals sentenced thereunder, could not be denied credit against his sentence for time served during his parole in the event of its revocation. See 28 C.F.R. § 2.10(b) and 2.52(d)(1) (currently in effect); 28 C.F.R. § 2.10(c) and 2.51 (in effect prior to May 14, 1976).

Prior to its decision to allow Shepard's detainer to stand, the Board did not give him either adequate "notice of the case against him" or adequate "opportunity to meet it." While he apparently knew that the detainer was based on his intervening conviction, it is unclear whether the Board, in deciding not to withdraw the detainer, was influenced by other information relevant to the appropriateness of continuing his confinement. Failing to ensure Shepard's ability to know and contest such information, the review procedure applied by the board did not afford him "a meaningful opportunity to present [his] case" and thus fell short of due process requirements.

## VII.

Since May 14, 1976, 18 U.S.C. § 4214 and 28 C.F.R. § 2.47 have required that a parole violation detainer be reviewed by the Parole Commission (the restructured Board's new title) within 180 days of its notification of the detainer's placement and that the parolee be afforded notice of the pending review, opportunity to submit a written application containing information relevant to the detainer's disposition, and—at public expense in the event of the parolee's indigence—assistance of counsel in the application's preparation. Like 28 C.F.R. § 2.53 before them, the new detainer-review provisions do not grant the parolee the right to contest the detainer by means of an in-person evidentiary hearing.[7]

Although the detainer-review procedure established by the new provisions is more protective of the parolee in Shepard's situation than its predecessor, it too suffers from constitutional infirmity: it also fails to advise the parolee adequately of the case against him.

We think it necessary that at some point before the Commission decides not to withdraw the parolee's detainer, it disclose to him in unabridged form all the evidence which may be considered against him, ex-

7. 18 U.S.C. § 4214 provides in pertinent part:

(b)(1) Conviction for a Federal, State, or local crime committed subsequent to release on parole shall constitute probable cause for purposes of subsection (a) of this section. In cases in which a parolee has been convicted of such a crime and is serving a new sentence in an institution, a parole revocation warrant or summons issued pursuant to section 4213 may be placed against him as a detainer. Such detainer shall be reviewed by the Commission within one hundred and eighty days of notification to the Commission of placement. The parolee shall receive notice of the pending review, have an opportunity to submit a written application containing information relative to the disposition of the detainer, and, unless waived, shall have counsel as provided in subsection (a)(2)(B) of this section to assist him in the preparation of such application.

(2) If the Commission determines that additional information is needed to review a detainer, a dispositional hearing may be held at the institution where the parolee is confined. The parolee shall have notice of such hearing, be allowed to appear and testify on his own behalf, and, unless waived, shall have counsel as provided in subsection (a)(2)(B) of this section.

(3) Following the disposition review, the Commission may:

(A) let the detainer stand; or

(B) withdraw the detainer.

28 C.F.R. § 2.47 is one of a set of proposed regulations which were published on an emergency basis to provide working rules under the new act pending the promulgation of permanent regulations in accordance with 5 U.S.C. § 553(b). It provides in pertinent part:

(a) In those instances where a parolee is serving a new sentence in an institution, a parole violation warrant may be placed against him as a detainer. Such warrant shall be reviewed by the regional Commissioner not later than 180 days following notification to the Commission of such placement. The parolee shall receive notice of the pending review, and shall be permitted to submit a written application containing information relative to the disposition of the warrant. He shall also be notified of his right to request counsel under the provisions of § 2.48(b) to assist him in completing his written application.

(b) Following a dispositional review under this section, the regional Commissioner may:

(1) Let the detainer stand and order further review at an appropriate time;

(2) Withdraw the detainer and (i) order reinstatement of the parolee to supervision upon release from custody, or (ii) close the case if the expiration date has passed;

(3) Order a revocation hearing to be conducted by a hearing examiner or an official designated by the regional Commissioner at the institution in which the parolee is confined.

cept to the extent that the Commission meets the heavy burden of establishing good cause for its nondisclosure.[8] *Cf. United States ex rel., Carson v. Taylor,* 540 F.2d 1156, 1161, (2d Cir., 1976). Moreover, the Commission must effect this disclosure soon enough to allow the parolee a meaningful opportunity to contest, mitigate or explain the evidence revealed. "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'"

However, while Shepard had a right to something more that the review procedures established by 28 C.F.R. § 2.53, when this case arose, and by 18 U.S.C. § 4214 now, we do not believe that due process necessarily entitled him to an in-person hearing. Rather we conclude that Shepard's due process rights would have been met had he been afforded (1) the safeguards now mandated by 18 U.S.C. § 4214, (2) full and timely disclosure of the evidence to be considered against him, and (3) a specific statement of the factual findings and reasoning underlying the decision arrived at concerning his detainer.

The importance of the disclosure requirement has already been emphasized. The administrative cost of compliance with it should be relatively insignificant. *United States ex rel. Carson v. Taylor,* 540 F.2d 1156, 1161 (2d Cir., 1976). Nor should compliance with the requirement of a statement of factual findings and reasoning be very burdensome to the Commission, whereas

> This requirement, if properly observed, should serve to protect the inmate from arbitrary and capricious decisions or actions grounded upon impermissible considerations. The compulsion upon the decisionmaker to set forth the reasons . . . of denial . . . , with some

specificity, "promotes thought by the decider" and impels him to "cover the relevant points."

*Haymes v. Regan,* 525 F.2d 540, 543–44 (2d Cir., 1975) (citation omitted).

Our determination that due process does not necessarily entitle Shepard to an in-person evidentiary hearing is founded upon several considerations. First, requirement of such a hearing in all cases would entail substantial administrative cost.[9]

Second, whatever error may occur in the absence of such a requirement is minimized by the procedural rights guaranteed the parolee under this decision and 18 U.S.C. § 4214. Since § 4214 ensures the parolee assistance of counsel, a hearing is not needed to remedy his possible inability to express himself effectively on paper. See *Matthews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), *distinguishing Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). And the fact that the parolee's written review application lacks some of the flexibility of an oral presentation is to a large extent compensated for by his right to prepare the application, with assistance of counsel, with knowledge of all the evidence to be considered against him. See *Eldridge,* 424 U.S. at 344, 96 S.Ct. 893, *distinguishing Goldberg,* 397 U.S. at 269, 90 S.Ct. 1011. Moreover, the core of the factual findings upon which the review of the parolee's detainer is based is conclusively established by his intervening conviction. *Morrissey v. Brewer,* 408 U.S. at 490, 92 S.Ct. 2593; *compare Cardaropoli v. Norton,* 523 F.2d 990 (2d Cir., 1975).

Third, the legislative history of § 4214 manifests, unequivocally the judgment of Congress that an in-person hearing requirement was not warranted. *E. g.,* S.Rep. No. 648, 94th Cong., 2d Sess. 35 (1976). This

---

**8.** 18 U.S.C. § 4214(b)(1)'s requirement, repeated in 28 C.F.R. § 2.47(a), that the parolee "receive notice of the pending review," see note 7 *supra,* cannot be reasonably construed to mandate such disclosure since, in contrast, § 4214(a)(2)(D) provides, with respect to the revocation hearing of the parolee whose viola-

tion has yet to be established, for "opportunity for the parolee to be apprised of the evidence against him."

**9.** The federal parolee serving an intervening federal sentence presents less of a problem.

judgment, of course, is entitled to "substantial weight" "in assessing what process is due in this case." *Eldridge*, 424 U.S. at 349, 96 S.Ct. at 909.

Finally, 18 U.S.C. § 4214(b)(2) provides:

If the Commission determines that additional information is needed to review a detainer, a dispositional hearing may be held at the institution where the parolee is confined. The parolee shall have notice of such hearing, be allowed to appear and testify on his own behalf, and, unless waived, shall have counsel as provided in subsection (a)(2)(B) of this section.

See also 28 C.F.R. § 2.47(b)(3). Thus, the possibility of a parolee not being "given a meaningful opportunity to present [his] case" is further reduced.

### VIII.

Since Shepard's treatment pursuant to 28 C.F.R. § 2.53 violated his due process rights under the fifth amendment, we reverse and remand. If the court below finds that the consequent delay in according him these rights would so impair his ability to adduce mitigating evidence that a constitutionally adequate review of his case would not now be possible, it may order the warrant quashed. Otherwise, the Commission should be required to review Shepard's detainer in conformance with this opinion within such time as the court may fix. See *e. g., United States ex rel. Blassingame v. Gengler,* 502 F.2d 1388 (2d Cir. 1974); *United States ex rel. Buono v. Kenton,* 287 F.2d 534, 536 (2d Cir.), *cert. denied,* 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44 (1961); *Jones v. Johnston,* 534 F.2d 353, 374–375, (D.C. Cir. 1976); *Johnson v. Holley,* 528 F.2d 116, 119 (7th Cir. 1975); *Cleveland v. Ciccone,* 517 F.2d 1082, 1089 (8th Cir. 1975).