**Anthony AUGELLO, Petitioner,**

v.

**WARDEN, METROPOLITAN CORRECTIONAL CENTER, UNITED STATES BUREAU OF PRISONS, and United States Parole Commission, George Doerbecker and James Stein, Respondents.**

No. 79 C 967.

United States District Court, E. D. New York.

May 24, 1979.

Zerin & Cooper, New York City, for petitioner by Ira S. Cooper, Dianne B. Stillman, New York City.

Edward R. Korman, U. S. Atty., E. D. New York, Brooklyn, N. Y., for respondents by Michele Coleman Mayes, Asst. U. S. Atty.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Petitioner, a federal parolee, seeks a writ of habeas corpus, presumably pursuant to 28 U.S.C. § 2241, complaining that he has been denied due process in a parole revocation proceeding. He is currently in custody, having surrendered to the United States Parole Commission on April 2, 1979, pursuant to a warrant charging him with two violations of the conditions of his parole.[1]

---

1. Respondents note that it is questionable whether this court has jurisdiction since it is still an essential aspect of the habeas corpus writ that it acts upon the person holding petitioner in custody, see *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (2 Cir. 1976), *citing Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–95, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973), and petitioner is now held at the Metropolitan Correctional Center located in the Southern District of New York. Several considerations lead the court to resolve this issue in favor of finding that jurisdiction exists. First, a contrary determination would merely result in the transfer of the action to the Southern District of New York, with concomitant delay perhaps rendering the issues moot. See 28 U.S.C. § 2241(d). Second, in view of our disposition on the merits, it would appear of dubious utility to delay decision by such a transfer. Finally, *Billiteri* itself supports the proposition that jurisdiction exists in the circumstances of the case.

The Court of Appeals there stated that:

"There are, to be sure, circumstances where a parole board may properly be considered a custodian for habeas corpus purposes, *e. g., after* a prisoner has been released into its custody on parole, see *Jones v. Cunningham, supra*, [371 U.S. 236 [, 83 S.Ct. 373, 9 L.Ed.2d 285] (1963)] or arguably, when the Board itself has caused a parolee to be detained for violation of his parole, see *Lee v. United States*, 501 F.2d 494, 501 (8th Cir. 1974)." 541 F.2d at 948.

The court when on to conclude that in a case in which a prisoner is under the control of a prison warden and is seeking release from precisely that control, it would stretch the term "custodian" beyond permissible limits to characterize the Parole Board as such for habeas purposes. The basis for this conclusion was petitioner's tenuous relationship with the Parole Board: it revolved merely around the Parole Board's discretion to authorize petitioner's release.

In contrast, petitioner here is not confined pursuant to an order of the Parole Commission revoking his parole and by which the warden of the Metropolitan Correctional Center has custody over him for habeas purposes. Rather, he is being detained at the Metropolitan Correctional Center pending the Parole Commission's determination. Petitioner is still as much in the Parole Commission's custody as when he was initially released. See *Jones v. Cunningham, supra*. Moreover, the Parole Commission is directly responsible for petitioner's detention pending a determination on the merits of his parole revocation and thus jurisdiction is prop-

At an interview with respondent Doerbecker, a United States Probation Officer, it was agreed that petitioner's preliminary interview to determine whether there was probable cause to believe he had committed such a violation would be held on April 10, 1979. It was further agreed that, upon written request, adverse witnesses and their records would be made available at the hearing.

In response to his letter requesting the presence of adverse witnesses and their records, petitioner was informed that:

"All adverse witnesses noted in your letter will be available, as will be the surveillance reports and monthly supervision reports for December, 1978 and January, 1979. . . .

"In regards to your last request, for the chronological entries of conversations made between Mr. Augello and Mr. Stein on reporting dates, it is declined at this time pursuant to the provisions of the Privacy Act [sic] [Freedom of Information Act, 5 U.S.C. § 552a et seq.].

"Please be advised that after consulting with the legal counsel of the Parole Commission, no recording equipment, electronic or otherwise, will be permitted in the hearing room."

On April 10, petitioner learned for the first time that the proceedings would not be recorded electronically or stenographically. His attorney thereupon objected to the procedure and refused to participate in the interview except to the extent of executing a form entitled, "Preliminary Interview and Revocation Hearing Form Part 2." Respondents proceeded with the taking of testimony on which they determined that probable cause had been established and prepared a summary of what occurred and a statement of reasons for the determination.

Petitioner contends that respondents' conduct violated his right to due process of law. Specifically, he alleges that the prohibition against transcription of the preliminary interview, and the failure of respon-

dents to provide him with the opportunity to examine *all* records pertaining to the evidence leading up to the issuance of the warrant for revocation, preclude him from intelligently confronting and cross-examining adverse witnesses at a final revocation hearing. He seeks release until respondents provide him with an opportunity to perpetuate his preliminary hearing and the records he demands. Since the parties agree that guidance in the circumstances presented is found in the Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), we turn to a review of the principles of law there announced.

After noting that parole revocation is not part of a criminal prosecution and thus the full panoply of rights afforded criminal defendants do not apply, *id.* 92 S.Ct. at 2600, the Court analyzed the process due in the preliminary hearing stage and emphasized the importance to both the State and the parolee of "an effective but informal hearing." The minimum requirements established are (1) an inquiry to determine whether there is probable cause or reasonable ground to believe that conditions of parole were violated, such inquiry to be held near the place of the alleged violation as promptly as convenient after arrest; (2) a hearing officer other than someone initially dealing with the case, although he need not be "neutral and detached" but can be an administrative officer, for example; (3) a hearing of which the parolee shall be given notice of the place and purpose with a statement of the alleged violations and at which he has the opportunity to appear on his own behalf and, upon written request, have made available to him for questioning those who have given information adverse to him. In concluding, the Court defined the responsibilities of the hearing officer:

"The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence giv-

er in this district. See *Propotnik v. L. R. Putnam*, 538 F.2d 806 (8 Cir. 1976); *Lee v. United*

*States, supra; Arnold v. United States Bd. of Parole*, 390 F.Supp. 1177, 1179 (D.D.C.1975).

en in support of parole revocation and of the parolee's position. Based on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision. As in *Goldberg* [*v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)], 'the decision maker should state the reasons for his determination and indicate the evidence he relied on . . .' but it should be remembered that this is not a final determination calling for 'formal findings of fact and conclusions of law.' 397 U.S., at 71, 90 S.Ct., at 1022 [, 25 L.Ed. 287]. No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error." 92 S.Ct. at 2603.

Consistent with the *Morrissey* decision, Congress enacted the Parole Commission and Reorganization Act of 1976, 18 U.S.C. §§ 4201–4218, which codified the principles set forth by the Court. In particular, section 4214(a)(1)(A) states that an alleged violator shall have the opportunity to have:

> "a preliminary hearing at or reasonably near the place of the alleged parole violation or arrest, without unnecessary delay, to determine if there is probable cause to believe that he has violated a condition of his parole; and upon a finding of probable cause a digest shall be prepared by the Commission setting forth in writing the factors considered and the reasons for the decision, a copy of which shall be given to the parolee within a reasonable period of time . . . ."

■ Measured against these requirements, the allegations of the petition, assuming their accuracy, do not give rise to a deprivation of any constitutional right founded either in the due process clause of the fifth amendment or in the confronta-

tion clause of the sixth. Nor do they abridge rights embodied in statute. Most fundamentally, it should be remembered that the preliminary interview is not a final determination of the parole revocation. Rather, the finding of probable cause is subject to *de novo* review at the final revocation hearing.[2] Thus, when viewed against the informality of the preliminary inquiry and its limited purpose, the procedures followed that precluded permanent recordation of the proceedings cannot be said to have deprived petitioner of any statutory or constitutional right.

Although a transcript or tape recording might well assist petitioner's attorney in "confronting" respondents' witnesses at the final hearing—presumably with inconsistent statements made earlier—we do not believe such assistance is constitutionally mandated. It is sufficient under the constitution—and *Morrissey* specifically confers such a right—that respondents afford petitioner the opportunity to confront and cross-examine adverse witnesses. There is certainly no allegation in the petition that asserts a denial of this right. Neither the constitution nor the cases, however, requires preservation of testimony in aid of the right to confrontation. The court trusts that attorneys will be able to represent their clients adequately despite this limited restriction.

■ It is evident, moreover, that petitioner's counsel seeks "discovery" akin to that afforded a defendant in a criminal prosecution. Petitioner's analogy to procedures followed during the course of a criminal prosecution, however, is solidly rejected in *Morrissey*, in which the Court observed that the revocation of parole is simply not a part of a criminal prosecution. Thus, petitioner's argument that he is entitled to the chronological entries of his conversations with his parole officer and other documentation in the files of the parole commission is misconceived to the extent he suggests that respondents have not been forthcoming either under the Federal Rules of Crim-

**2.** Respondents suggest that, although not required by statute or regulation, a verbatim record of the final hearing is made in accordance with the practice of the Commission.

**1234**

inal Procedure, see Rules 1, 54(c), F.R. Crim.P., or the Jencks Act. In fact, respondents have fulfilled their only obligation under 18 U.S.C. § 4214.

Under the statute, respondents are obliged to apprise the parolee of the evidence against him and, upon request, to provide him with the opportunity to confront and cross-examine adverse witnesses. 18 U.S.C. § 4214(a)(2)(D). See also 28 C.F.R. § 2.48(c). The court is of the view that neither this section nor the constitution requires disclosure of information which is not evidence to be used against the parolee. Thus, while petitioner might well be correct in his contention that respondents' failure, if any, to disclose evidence they intend to use against him at the final hearing might violate federal law, see *United States ex rel. Carson v. Taylor*, 540 F.2d 1156 (2 Cir. 1976), this claim is not ripe for decision since petitioner's final hearing is not set to be held until May 30, 1979. See *Shepard v. United States Parole Board*, 541 F.2d 322, 328 (2 Cir. 1976), vacated, 429 U.S. 1057, 97 S.Ct. 779, 50 L.Ed.2d 773 (1977).

A limited obligation to disclose hardly suggests a Congressional intention to afford an alleged parole violator unlimited discovery. *Cf. Prellwitz v. Berg*, 578 F.2d 190, 192 (7 Cir. 1978). Since the purpose of the revocation hearing is to determine whether petitioner's "conditional liberty properly dependent on observance of special parole restrictions" and not his "absolute liberty to which every citizen is entitled," *Morrissey v. Brewer, supra*, 92 S.Ct. at 2600, should be terminated, discovery need only be as broad as the charged violations. *Cf. Franklin v. Shields*, 569 F.2d 784, 795 (4 Cir.), cert. denied, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978).

Here respondents represent that they have disclosed all evidence relied on for revoking parole, and petitioner does not contend that respondents have not made complete disclosure. Rather, he seeks information that was apparently not relied on by administrative officials in deciding to seek petitioner's parole revocation. Respondents contend that the additional information can

only be released pursuant to request under the Freedom of Information Act, 5 U.S.C. § 522a *et seq.* We need not pass on the merits of this contention, however, since it is the court's conclusion that, subject to the limitation of proof at the final hearing established in *United States ex rel. Carson v. Taylor, supra*, respondents' disclosure complied with the dictates of due process.

Accordingly, the petition for a writ of habeas corpus is denied.

SO ORDERED.